ALBERT POLLARD V. THE STATE.

No. 321. Decided January 19, 1910.

Rehearing denied February 16, 1910.

1.—Murder—Race Discrimination—Grand Jury—Indictment.

Where, upon trial of murder, the defendant was a negro, and interposed a motion to quash the indictment on the ground of race discrimination in the composition of the grand jury, in that there was no negro on same; and interposed the same motion to quash the special venire, and it appeared from the record on appeal that the grounds set up as a basis for the quashing of the indictment and the special venire were not sustained by the evidence, but that they were in substance proven to be untrue, and that the law with reference to the selection of grand and petit jurors by the jury commissioners had been in every respect complied with, 'there was no error. Following Thomas v. State, 49 Texas Crim. Rep., 633.

2.—Same—Evidence—Impeaching Witness.

Upon trial for murder there was no error in rejecting testimony offered by the defense that the stepfather of the State's witness was indicted for rape upon her; such testimony having been offered to discredit said witness, and said stepfather not having been a witness in the case; besides the witness herself testified that she had never been married and was the mother of a child.

3.—Same—Evidence—Impeaching Witness.

Where, upon trial for murder, the State's witness on cross-examination had been permitted to testify that the reputation of another State's witness for chastity was bad, and that she was the mother of a child and had never been married, there was no error in excluding testimony on cross-examination of the first witness that her husband was indicted for rape on the person of the second State's witness and was a fugitive from justice, he not being a witness in the case.

4.—Same—Evidence—Nature of Wounds—Expert Testimony.

Where, upon trial for murder, the shooting was admitted, and the wound was shown to be mortal and the proximate cause of the death of the deceased by all the testimony, there was no error in permitting a State's witness to testify that he was present when the physician probed the wound and permit him to describe the character of the wound, the statement of the physician made to the said witness not being offered in evidence,

**5.—Same—Charge of Court—Murder in the First Degree.**

Upon trial for murder, the fact that the court charged on murder in the first degree, could not avail defendant where the conviction was for murder in the second degree.

**6.—Same—Evidence—Character of Deceased.**

Upon trial for murder, where the State contended that the deceased's reputation for peace and quietude was good, this could not be offset by testimony that the deceased had been confined in the penitentiary, it not having been shown for what offense he had been convicted.

**7.—Same—Evidence—Threats of Third Parties.**

Upon trial for murder, threats of third parties against the defendant to have deceased kill the defendant, without showing a conspiracy or acting together of such persons and deceased was not admissible as a circumstance tending to justify the defendant in taking the life of the deceased; besides the bill did not show that such proof could have been made.

**8.—Same—Evidence—Declarations by the Defendant.**

Where, upon trial for murder, the State was permitted to show by the defendant while on the witness stand that he made and signed a statement in writing how the homicide took place, and that the State was permitted to exhibit the same to the witness in the presence and hearing of the jury and required him to testify that he had signed the same, but that such statement was never offered in evidence, and no incriminating evidence based thereon was admitted in evidence, there was no error.

**9.—Same—Argument of Counsel—Metaphor and Opinion of Counsel.**

Where, upon trial for murder, defendant's counsel objected to the metaphor and opinion of State's counsel used in the latter's argument with reference to the guilt of the defendant, and there was no request made to withdraw this argument from the jury, there was no reversible error. Following Anschicks v. State, 6 Texas Crim. App., 524, and other cases.

**10.—Same—Charge of Court—Murder in the Second Degree—Practice on Appeal.**

Where, upon trial for murder, the evidence raised the issue of murder in the second degree, complaint that the charge of the court was not warranted by the evidence and which did not point out any error in the charge itself or call attention to any defect or infirmity therein, but rested mainly on the proposition that the evidence in the case did not raise the issue of murder in the second degree, does not constitute reversible error.

**11.—Same—Charge of Court—Manslaughter—Practice on Appeal.**

Where, upon appeal from a conviction of murder in the second degree, objection was raised to the court's charge on manslaughter but failed to point out the defect of said charge, and the charge of the court was a fair submission of that issue, and no additional instructions were requested, the same can not be reviewed on the ground that the same was too restricted and not liberal enough.

**12.—Same—Charge of Court—Self-Defense—Practice on Appeal.**

Upon appeal from a conviction of murder, an objection to the court's charge on self-defense that it was too restrictive and not generally liberal enough on the law of self-defense but limited the right therein, is too general to be considered.

**13.—Same—Sufficiency of the Evidence—Murder in the Second Degree.**

Where, upon appeal from a conviction of murder in the second degree, it appeared from the record that both manslaughter and murder in the second degree were raised by the evidence, the verdict will not be disturbed.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford,

Appeal from a conviction of murder in the second degree; penalty, twenty-one years imprisonment in the penitentiary.

The opinion states the case.

*J. Vance Lewis,* for appellant.—On question of court's charge on manslaughter: Orman v. State, 24 Texas Crim. App., 495; Ivory v. State, 48 Texas Crim. Rep., 279; Yancy v. State, 48 Texas Crim. Rep., 166; Swain v. State, 48 Texas Crim. Rep., 98; Lara v. State, 48 Texas Crim. Rep., 568, 89 S. W. Rep., 840; Cooper v. State, 48 Texas Crim. Rep., 36, 14 Texas Ct. Rep., 94; Stacy v. State, 48 Texas Crim. Rep., 95, 86 S. W. Rep., 327; Poole v. State, 45 Texas Crim. Rep., 348.

· On question of race discrimination: Collins v. State, 60 S. W. Rep., 42.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This appeal is prosecuted from a conviction had in the District Court of Erath County, on July 19, 1909, finding appellant guilty of murder in the second degree, and assessing his punishment at twenty-one years confinement in the penitentiary.

Appellant makes, for the most part, a very fair statement of the case in his brief filed herein, and we substantially adopt same. The homicide, it appears from the evidence, occurred on the outside of the house occupied by one Charlie Thompson, a young girl, for whose affections it appears that deceased and appellant were rival candidates. The evidence shows that while both appellant and deceased had been acquainted with this girl for some time, they had never met each other until the day of the night of the homicide. All of the parties were negroes. Deceased was a man some 25 years of age, something like six feet high, weighing about 175 pounds, and was strong and able-bodied. Appellant was only about 18 years of age, and a much smaller man. The evidence further shows that appellant worked in the daytime and deceased at night. The parties met each other during the day, but no unfriendly conversation or hostile demonstration was made at the place of the meeting towards or concerning each other, though the evidence raises the issue that deceased protested against and undertook to prevent Charlie Thompson from going away from the house with appellant, and one Ural Thomas, a young negro girl, who had gone with him to her house. This occurred some little time before the killing. After the first visit appellant went again, as he says by invitation, to Charlie Thompson's place with the witness Ural Thomas, and after they had been there some little time they started to leave, when appellant asked Ural Thomas to go out first, which she declined to do, and thereupon he went out of the house with his gun in his hand cocked and his hand on the trigger. That the next thing that the witness heard was a statement, "Stand back," and

almost immediately a gun fired. Blood was found on the house near the corner, and later the body of deceased lying some few feet therefrom. He was unarmed, and had no weapons of any kind on his person. Both Charlie Thompson and Ural Thomas testified, in substance, that on asking appellant what he was doing with the gun, that he said that if deceased bothered him he was going to kill him; that thereupon Charlie Thompson said to him, that if he did he would be sent to the penitentiary, to which he replied he did not care. Other threats were shown by appellant towards deceased; and threats by deceased were also introduced through one John McGary, as well as by the testimony of appellant, to the effect that McGary stated that deceased had said to him, it seems in anticipation of appellant coming to Dublin, that if he did come there that he would kill him. Both appellant and deceased proved a good reputation as peaceable, quiet men. This is a brief but probably a sufficient statement of the facts to illustrate the questions hereinafter discussed.

1. When the case was called for trial appellant interposed a motion to quash the indictment on the ground, in substance, that he was a negro, and of the discrimination in the composition of the grand jury in that there was no negro on same; that there were many citizens of the African race living in the county eligible for jury service, and that they had been purposely excluded. The motion to quash the special venire was based, substantially, on the same ground. The motion is well drawn, and is sufficient if sustained by the evidence to have justified and indeed required the court to have set aside the indictment as well as to have quashed the venire. An inspection of the record, however, demonstrates beyond any doubt not only that the grounds set up as a basis for the quashal of the indictment and the special venire were not sustained by the evidence, but they were, in substance, proven to be untrue. It was shown in the first place that only one and a half or two percent of the population of Erath County were negroes, and that a small part of the adult male population of this race were eligible for jury service. All of the jury commissioners testified that they were in terms instructed by the court before entering upon their duties that there must and should be no discrimination against the negro race in the selection of the grand jury or special venire, and that in fact no discrimination had been practiced in their selection. One of these commissioners stated that there was in his portion of the county, and within his knowledge, only two negroes in the county, and that one of these was dead and the other had moved away. All of them testified that in the selection of the grand jury and special venire they had endeavored, without discrimination on account of race or color, to secure men competent and qualified under the law. Under the authority of Thomas v. State, 49 Texas Crim. Rep., 633, there is no possible merit, as presented in this record, in these contentions. It is shown, in a general way, that for many years no negro had been selected or empaneled as either a grand or petit

juror. While this circumstance might, in a close case, have weight, it can not be considered where, in this particular case, it is shown that the law had been in every respect complied with.

2. During the trial appellant offered to prove by Ural Thomas, on cross-examination, that her stepfather was indicted in the District Court of Erath County for the crime of rape committed upon her. This testimony, the bill recites, was offered by appellant as a circumstance tending to discredit the witness Ural Thomas. This testimony was objected to by the State, because same was hearsay, immaterial and irrelevant, and not competent nor admissible, and the objection was sustained by the court. The bill is defective, in the first place, in that it does not affirmatively state what the witness would have answered in response to the question asked her, or that said fact stated could have been shown by the witness. The stepfather of Ural Thomas was not a witness in the case. The court also states in his qualification to the bill that the witness had testified that she had never been married, and was the mother of a child. It is too clear for discussion that this testimony was not admissible.

3. While the witness Stella Towers was on the stand it was sought to be shown by her on cross-examination that her husband stood indicted in the District Court of Erath County for the offense of rape on the person of the witness Ural Thomas, and that he was a fugitive from justice. This testimony was offered for the purpose of discrediting the witness Ural Thomas. In approving this bill the court states that the witness Stella Towers was permitted to testify that Ural Thomas' reputation for chastity was bad, and that she was the mother of a child and had never been married; and also states in his explanation that the stepfather of Ural Thomas did not testify in the case. There was no error in respect to this action of the court.

4. Complaint is made that the court erred in permitting Bates Cox, sheriff of Erath County, to testify, over appellant's objection, as to the character of the wound on the body of deceased, the range of same, depth, and that he was present when the physician probed the wound, and that he had heard said wound described by the physician in attendance at the time he probed it upon the body of the deceased. The bill does not show that this witness undertook to reproduce or state any testimony given or statement made by the physician. This evidence was objected to because the witness was not shown to be a physician or surgeon, and had not qualified to speak as to the character and nature of the wound. The precise testimony objected to is not set out. In view of the fact that the shooting was admitted, and the wound was shown by all the testimony to be mortal and the direct and proximate cause of the death, it must seem evident that there is no merit in this contention.

5. Again, it is complained that the court erred in submitting to the jury the issue of murder in the first degree. If it be conceded that murder in the first degree was not in the case, to which conten-

tion we are not prepared to agree, it is supported by an unbroken line of decisions in this State that the fact that the court charges on murder in the first degree, can not avail appellant where the conviction is for a grade of the offense of murder which is supported by the testimony.

6. It is again complained that the court erred in refusing to permit appellant to show by the witness Tidwell that deceased had been confined in the penitentiary of this State. The bill recites that appellant had theretofore attacked the general reputation of the deceased, and had endeavored to prove his reputation was that of a violent and dangerous man, and that the State had introduced witnesses to offset the State's contention, and had shown by her witnesses, among others, by the witness Tidwell, that the deceased's reputation for peace and quietude was good, and that thereupon he offered to show by said witness, and the witness would have testified had the court permitted him so to do, that deceased had been in the penitentiary, which was a circumstance tending to establish the contention of appellant that deceased was a violent and dangerous man. The bill is allowed with this explanation: "That defendant did not offer to show for what offense he had been convicted; nor to show that it was one that bore on his character for peace or violence." This is not a case where a conviction for a felony is sought to be introduced as affecting the credibility of a witness. If on the issue of one's reputation for peace or violence, evidence of their confinement in the penitentiary could be admitted at all, we think it clear that it could only be admitted in respect to a conviction for some offense which would from its nature and character have some bearing on one's reputation in the respect mentioned. For instance, a conviction of bigamy or forgery could have little bearing on the reputation of deceased as a peaceable or as a quarrelsome and violent man.

7. Further, it was sought to be shown on the trial that the State's witness, Charlie Thompson, and other persons had threatened to have deceased kill appellant, as a circumstance tending to justify him in taking the life of the deceased. The bill does not state that such proof could have been made, or the witnesses by whom such testimony could have been adduced; it merely recites that he offered to make such proof. It is, therefore, under the rules of this court obviously informal and insufficient. Besides, we know of no rule of law by which threats of other persons could be admitted unless a connection was shown between such persons and the deceased, or there was some proof of conspiracy between such person and the one who actually did the killing or some evidence of their acting together in such killing. It would have been competent as showing bias or prejudice to have made this proof as affecting the testimony of Charlie Thompson, if offered for that purpose, and limited to that end, but as justification for the homicide, it was clearly inadmissible.

8. Again, complaint is made that while appellant was on the stand

as a witness in his own behalf, the State was permitted to show that he made and signed a statement in writing detailing how the homicide took place, and that the State was permitted to exhibit said statement to the witness in the presence and hearing of the jury, and required said witness to testify that he had signed such statement. The bill recites that appellant objected to such testimony, and to the conduct on the part of the district attorney as immaterial and irrelevant, and as tending to prejudice the rights of appellant before the jury. In allowing the bill the court does so with the explanation that no statement was admitted in evidence. Proof of the mere fact that appellant had made a statement, where the testimony goes no further, and no incriminating evidence based thereon is admitted against him, can furnish appellant no just ground of complaint.

9. Again, serious complaint is made of the alleged misconduct of private counsel in the prosecution who, as the bill recites, made use of the following language: "Times change, men change, conditions change, but, gentlemen of the jury, principles never change. On last Sunday evening there appeared a black cloud in the east; it looked like a cyclone; it had a head and that head bursted in Stephenville, and in Erath County, and it proved to be all wind and nothing else. The conduct of defendant's counsel had been audacious before the court and jury, according to my way of thinking. When the State had rested its case, and had made a strong case against the defendant, this wise man from the east, the defendant's counsel, appeared before the court, in your presence, and audaciously asked the court to instruct the jury to find for the defendant and find him not guilty. The colored brother, who tells us that he has practiced in New York, and in Europe, has had the audacity to demand that this court instruct a verdict of not guilty in this case while the evidence, in my opinion, is ample to convict the defendant of murder." Thereupon, as the bill of exceptions continues: "Defendant's counsel excepted to the foregoing remarks of counsel at the time same were made, and asked the court to suppress counsel for the State, which the court declined to do." This bill of exceptions is approved with the following explanation: "That witnesses had testified upon the trial that negro witnesses in this case had chartered a car from Cleburne to Stephenville, there were so many of them, and that the black cloud referred to by counsel in his argument was this crowd of negroes who arrived in Stephenville on Sunday evening prior to the beginning of this trial, and the head of the black cloud referred to by counsel was defendant's counsel. There was no request made of the court, either oral or in writing, to withdraw this argument from the jury." In view of the statement made by the court, that there was no request made of him either orally or in writing to withdraw the argument from the jury, and no special charge asked touching the matter under all the authorities it is clear that this constitutes no ground of reversal. Anschicks v. State, 6 Texas

Crim. App., 524; Jackson v. State, 18 Texas Crim. App., 586; Young
v. State, 19 Texas Crim. App., 536; Kennedy v. State, 19 Texas Crim.
App., 618; Watson v. State, 28 Texas Crim. App., 34, 12 S. W. Rep.,
404; Rahm v. State, 30 Texas Crim. App., 310, 17 S. W. Rep., 416;
Wolfforth v. State, 31 Texas Cr. Rep., 387; McKinney v. State, 31
Texas Cr. Rep., 583, 21 S. W. Rep., 683; Wilson v. State, 32 Texas
Cr. Rep., 22, 22 S. W. Rep., 39; Jones v. State, 33 Texas Cr. Rep.,
7, 23 S. W. Rep., 793; Boscow v. State, 33 Texas Cr. Rep., 390, 26 S.
W. Rep., 625; Wright v. State, 37 Texas Cr. Rep., 146, 38 S. W. Rep.,
1004; Gilmore v. State, 37 Texas Cr. Rep., 178, 39 S. W. Rep., 105;
Franklin v. State, 38 Texas Cr. Rep., 346, 43 S. W. Rep., 85; Hines
v. State, 32 S. W. Rep., 701; Exon v. State, 33 S. W. Rep., 336; Epps
v. State, 33 S. W. Rep., 975; Robinson v. State, 57 S. W. Rep., 811;
Castlin v. State, 57 S. W. Rep., 827; Martinez v. State, 57 S. W. Rep.,
829; Howell v. State, 57 S. W. Rep., 835.

10.   The charge of the court on murder in the second degree is the
subject of vigorous complaint.  This charge is as follows:

"The next lower grade of culpable homicide than murder in the
first degree is murder in the second degree.

"Malice is also a necessary ingredient of the offense of murder in
the second degree, the distinguishing feature, however, so far as the
element of malice is concerned, is that in murder in the first degree
malice must be proven to the satisfaction of the jury beyond a rea-
sonable doubt, as an existing fact; while in murder in the second de-
gree malice will be implied from the fact of an unlawful killing.

"Implied malice is that which the law infers from or imputes to
certain acts, however suddenly done.  Thus, when the fact of an un-
lawful killing is established, and the facts do not establish express
malice beyond a reasonable doubt, nor tend to mitigate, excuse or
justify the act, then the law implies malice, and the killing is murder
in the second degree if the killing is shown to be unlawful, and
there is nothing in evidence on the one hand showing express malice,
and on the other hand there is nothing in evidence that will reduce
the killing below the grade of murder, then the law implies malice
and the homicide is murder in the second degree.

"Now, if you believe from the evidence in this case, beyond a rea-
sonable doubt, that the defendant, Albert Pollard, in the county of
Erath, and State of Texas, on or about the 8th day of March, 1909,
with implied malice aforethought did unlawfully kill Will Walton
with a gun by shooting him then you will find the defendant guilty of
murder in the second degree and so say by your verdict, and assess
his punishment at confinement in the penitentiary for any term of
years not less than five years in your discretion."

This charge is complained of because same was not warranted by
the evidence, and was calculated to lead the minds of the jury to be-
lieve that the defendant was guilty of such murder, and that a severe
penalty should be inflicted upon him therefor, and to believe that in

the mind of the court there was evidence tending to show that the defendant was guilty of murder in the second degree and therefore prejudicial to the defendant. It will be noted that these complaints do not point out any error in the charge itself, or call attention to any defect or infirmity therein, but the complaint is rested mainly on the proposition that the evidence in the case does not raise the issue of murder in the second degree. In view of the threats, hostility and preparation shown by the evidence, we are not prepared to agree to the contention of counsel for appellant that murder in the second degree was not raised by the testimony.

11. By bill of exceptions complaint is also made of the charge of the court on the subject of manslaughter. In view of the length of this charge we deem it unnecessary to set it out in full. We will, however, set out literally the complaint made of said charge in the bill of exceptions, which is as follows: "The defendant objected and excepted to said portion of said paragraph, and to the submission of said issue of manslaughter, in his motion for a new trial, because said charge upon the law of manslaughter is too restricted, and not liberal enough to the defendant, and, manslaughter being a defense to murder, had the court given the defendant a more liberal charge on the law of manslaughter the jury would in all probability have found him guilty of that offense, and have assessed his penalty at from two to five years." It will be noticed that by inspection of this objection that it was very general, and pointed out no particular respect in which the charge was erroneous and hurtful. Under the law of this State, before we are authorized to review the correctness of a charge either by bill of exceptions or motion for new trial, same must be objected to and the particular error pointed out. This the bill does not do. In general, the charge of the court on manslaughter is a fair submission of that issue, and if additional instructions were desired or further elaboration, or a more particular submission of any issue arising in the case had been desired, it may be if the exception then interposed had directed the attention of the court to the infirmity or error or failure to include any feature or issue raised by the evidence therein, that the court would have acceded to such suggestion.

12. Complaint is made of the charge of the court on the law of self-defense, and this portion of the charge of the court is excepted to in this language: "Because same was too restrictive, and not general and liberal enough towards the defendant on the law of self-defense, but limited the rights therein." This complaint is too general to be the subject of review.

13. Finally, it is complained that the verdict of the jury is contrary to the law and the evidence; that the verdict is excessive, and finds appellant guilty of a grade of homicide greater than authorized by the testimony. We can not accede to either of these contentions. While the issue of manslaughter was raised by the evidence, and judging from the record we should rather be inclined to feel that a con-

viction for this offense would have been more satisfactory, and better have attained the ends of justice, however, the issue of murder in the second degree was clearly raised, as we believe, by the testimony, and there were many facts and circumstances which would well have justified the jury in finding appellant guilty of murder in the second degree. If guilty of murder in the second degree, the law allows a wide range in the imposition of the punishment therefor, and we would not be authorized to reverse a judgment of conviction on the ground that said punishment was excessive, unless it so clearly appeared that the verdict was excessive as to admit of no possible dispute.

Finding no error in the record, the judgment of conviction is in all things affirmed.

*Affirmed.*