## T. G. BECKHAM V. THE STATE.

No. 19034.   Delivered June 16, 1937.
Rehearing Denied November 10, 1937.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, for appellant.

A. O. Newman, District Attorney, of Coleman, J. C. Darroch, of Brownwood, and Lloyd W. Davidson, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, twenty years in the penitentiary.

This killing took place in the late afternoon, and there is some evidence that it was getting dark. The scene was laid in the little town of Zephyr in Brown County. Deceased and a daughter of appellant had been sweethearts at stormy intervals for some time. With other young people they had been out to a swimming hole on the afternoon before the killing. We need not go at length into what occurred out there, but deceased and the girl referred to had almost, if not quite, an extended fight. Each struck the other a number of times, and each called the other vile names. Each had imbibed more or less liquor. The State asserts that the girl was drunk and was the aggressor in what was done. The defense, to some extent, denied this. Anyway she did not come back to Zephyr with her party, but was picked up on the highway and brought in by a strange man and his wife. Her face and neck were bruised and she was disheveled, and told her brother-in-law Woods, at whose filling station she got out of the car mentioned, that deceased had beaten her up. Woods went in his car to appellant's home and told him what she said. Appellant appeared to be getting ready to retire, but put on his shoes, took his pistol, went with Woods, talked to the girl, and then he and Woods drove down the highway past where deceased lived with his brother. Deceased, his brother and nephew were out in their yard. Appellant drove by very slowly. Appellant and Woods then drove to the home of Mary Oliver, another daughter of appellant. Here they parked, and appellant got out of the car, but Woods stayed in. Presently deceased, his nephew, appellant's son and daughter and some others came toward the car of Woods. Appellant met them. The testimony as to what then occurred is widely different. No one says that deceased made any offensive move save appellant. The story of appellant was that when he and deceased came face to face at said time, deceased said "What is it, Mr. Beckham?" to which appellant replied "What made you beat up the girl?" and that deceased threw up his hand in which appellant said he saw the gleam of a knife, and said "What is it to you, you son-of-a-bitch," and that he, appellant, quickly drew his pistol and shot twice, and then went to the car, and he and Woods drove away. Deceased was shot through

the heart and face. Witnesses who reached the scene not long after the shooting testified that in the right hand of deceased was an open knife. We might add that no one of the six other witnesses, who were present at the killing, saw deceased make any offensive move, or heard him make the statement attributed to him by appellant. Some of these witnesses affirm they were close by deceased when he was shot, and that his hands were hanging by his side in the usual position of a man walking along. This much of the testimony we have set out for what it is worth as making clear the conclusions we have reached.

Appellant's defensive theories were self-defense against a threatened attack with a knife, and also that his mind was in such condition as that the killing could in no event be more than murder without malice.

As a witness appellant swore that he had been present at a prior occurrence when deceased threatened to attack a man with a knife; and that he had heard of numerous other instances when deceased had so threatened others or attempted to cut them. The State did not attempt to show by any testimony that appellant had not so heard, nor that the occurrences, referred to by him, had not taken place, which fact seems to have actuated the learned trial judge in his rulings on the matters set out in appellant's bills of exceptions 2, 3, 4 and 5. From these bills we learn that appellant wished to prove the taking place of the occurrences, of which he had been told, viz: that at times and places specified deceased had tried to cut certain other parties, and had displayed his knife and threatened to cut others. This testimony was offered for its supposed bearing on the state of appellant's mind when he shot deceased.

In Sec. 2094, Branch's Annotated P. C., many cases are cited supporting the following propositions:

"If self-defense is an issue, defendant may prove anything known to him prior to the homicide about deceased as going to show why defendant acted. Proof of specific acts of unlawful violence committed by deceased on others is admissible, if defendant knew of them prior to the homicide, to show who was probably the aggressor, and to show the state of mind of the defendant at the time of the homicide."

Many cases are cited, among them Spangler v. State, 41 Texas Crim. Rep., 430; Crow v. State, 48 Texas Crim. Rep., 420. It appears to us that we are compelled to give effect to these holdings, and to conclude the learned trial court fell into error. We recognize that in the same section of Mr. Branch's valuable work, above cited, appear other cases differentiating

the holdings cited under the paragraph above quoted, and we also note the qualifications placed on each of these bills of exceptions to the effect that appellant testified that he had heard of the matters set out in said bills, and that such fact was in no way controverted or contested by the State on this trial.

However, this left to the unsupported testimony of the accused not only his claim that he had heard of the occurrences,—but also the question as to whether such things had in fact transpired. Proof that they had in fact occurred,—made by persons other than the accused,—would undoubtedly have supported his claim that his mind was affected by his knowledge and belief based on such occurrences. He asserted self-defense against a knife attack by deceased. The State substantially denied any such knife attack by the testimony of its eye-witnesses, and also combated self-defense based thereon. We would have to go against too many decisions of this court in order to agree with the State.

Without discussing the other complaints, none of which are well founded, for the errors of the rejection of the testimony mentioned the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—The State has filed a motion for rehearing urging that the bills of exception upon which a reversal was based are defective and insufficient to bring the complaint forward. We have again examined the bills and when considered in connection with the court's explanation thereon we confess our inability to discover such defect in them as precludes consideration.

Appellant has also filed a motion calling attention to a number of bills of exception wherein complaint is brought forward because the State was permitted to prove ill feeling and threats of R. D. Woods against deceased, it being appellant's contention that the evidence is insufficient to show a conspiracy or acting together by Woods and this appellant, and therefore, proof of declarations by Woods showing malice and ill will by him towards deceased had no place in the trial of appellant. We discuss the question no further than to say that under the record in the present case we entertain grave doubts as to whether such proof was admissible, and in the event of another trial the court should be cautious in regard to admitting such evidence.

We do not go further because the facts upon another trial may not present the same picture as we have in the present record, and on the other hand, we do not desire the State to be misled into thinking our failure to write upon the subject will justify it in invoking the "law of the case" rule.

The motion of the State for rehearing is overruled.

*Overruled.*