### R. D. WOODS v. THE STATE.

No. 18981.   Delivered February 23, 1938.
State's rehearing denied April 20, 1938.

The opinion states the case.

*Callaway & Callaway,* of Brownwood, for appellant.

*A. O. Newman,* District Attorney, of Coleman, *J. C. Darroch* and *E. M. Davis,* both of Brownwood, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, JUDGE.—The offense charged is murder, and the judgment was murder with malice, and punishment assessed at five years in the penitentiary.

This is a companion case to Beckham v. State, 133 Texas Crim. Rep. 206, 109 S. W. (2d) 764.

It would appear from the record that Tol Beckham was the person who shot and killed Raymond Thompson, the deceased, but it was the theory of the State that this appellant was guilty under the law of principals of acting together with Mr. Beckham. The facts in this case have given us much concern, and after a careful review thereof we are forced to the conclusion that the same are not sufficient to show appellant's guilt in this matter.

It would appear from the State's testimony in this cause that the appellant was a son-in-law of Mr. Beckham; that on the day of the homicide, late in the afternoon, Mr. Beckham's daughter, Louise, appeared at appellant's filling station in the town of Zephyr in a near hysterical condition, with her clothing torn and her hair disheveled, and made a statement to the appellant, who soon thereafter got in his car, drove off and came back in a few minutes in company with his father-in-law and Louise Beckham's father, Tol Beckham; that Tol Beckham had a conversation with his daughter Louise, and immediately got in a car with the appellant and drove off; that he and appellant drove by the place where Raymond Thompson was living, and saw

Raymond Thompson standing in the yard at such place; that the said Tol Beckham and the appellant drove down in front of the home of another daughter of the said Tol Beckham at about the same time that Raymond Thompson, the deceased, drove up in front of such home; that Mr. Beckham got out of the car and walked about forty feet to where the deceased was standing and accosted the deceased with the following words: "How come you to beat up my girl like you did?" Raymond Thompson said something that was not understood, but he raised up his left hand and Mr. Beckham shot him twice.

Some of the witnesses say that the appellant was sitting in a car forty or fifty steps away; others say that they could not see who was in the car, but the appellant himself made a statement to another party that he was sitting in the car at the time.

It was the theory of the State that the appellant furnished the pistol to his father-in-law with which the shooting was done; however, the testimony seems to strongly indicate that appellant had sold this pistol to his father-in-law at a time prior to this homicide, and same was the property of Mr. Beckham at that time.

We have searched the record for any further incriminating circumstances of any kind against this appellant but have failed to find anything relative thereto. The only incriminating fact produced by the State in this record is that the appellant drove up near the scene of the homicide with Mr. Beckham and remained sitting in the automobile from the beginning to the end of this unfortunate occurrence.

It is true that the State offered in evidence many expressions of ill-will upon the part of the appellant towards the Thompsons in general, meaning the whole Thompson family, among them the deceased, and in our judgment that was not the cause of this difficulty. The cause of the difficulty was bound to have been the fact that Louise Beckham complained to her father of the condition that she was found in at the filling station, and he approached the deceased on account of such fact, and that was the cause of the fatal difficulty. However, it is our judgment that these statements were admissible to show ill-will, motive and intent upon the part of the appellant herein.

Bill of exceptions No. 10 is to the effect that the witness Cobb was allowed to testify that about five weeks prior to the homicide he had a conversation with T. G. Beckham in his barber shop at Zephyr, and that the said Beckham stated that the Thompsons had turned R. D. Woods in and that Raymond Thompson had turned him in, meaning thereby that Thompson

was the cause of the home of R. D. Woods being searched by officers in an endeavor to locate liquor therein. In our judgment this matter would not be admissible as against the appellant Woods, being outside of his presence and hearsay, and a conclusion of the witness Beckham, by which it would seem to us the appellant should not have been bound.

We feel sure that the matters complained of in bill of exceptions No. 11 will not be repeated in the event of another trial of this cause.

Under all the circumstances in this case we do not believe the evidence is sufficient to show this appellant guilty of murder with malice. This judgment will, therefore, be reversed and the cause remanded.

### ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—Our re-examination of the record in the light of the motion for rehearing filed by counsel for the State leads us to the conclusion that the proper disposition of the case was made upon the original hearing.

The State's motion for rehearing is therefore overruled.