SALATHEAL HARRY TRACY EVERHART V. STATE.

No. 24612. January 18, 1950.
Appellant's Motion for Rehearing Denied (Without Written
Opision) February 22, 1950.

Bowen C. Tatum, Dallas, for appellant.

Will R. Wilson, Jr., Criminal District Attorney, William B. Henley, Jr., Assistant District Attorney, Dallas, and George P. Blackburn, State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was charged with the killing with malice of Brady Johnson, and by the jury assessed a term of life in the penitentiary, and he appeals.

From the facts it appears that appellant and several friends, together with the deceased and his wife, were engaged in drinking both whisky and wine during the evening of the homicide. They finally came to Jack Green's rooms on Swiss Avenue in

Dallas. This place consisted of two rooms and a bath over a garage. The drinking continued, and the wife of the deceased, while fully clothed, became so drunk that she was placed on a bed in such room and went to sleep. She awakened the next morning on a pallet in this room about 8:00 o'clock. Her skirt was off, as were her panties and shoes. She tried to rouse her husband whose body lay across her. He did not answer her, and she then rolled him over and found his head mashed in and that he was dead. No other persons save her and her husband's body were in such room at the time. Some small amount of money which the deceased was supposed to have had was missing. A baseball bat was found in the bathroom of this place.

Appellant's statement was introduced wherein he told about having a row with deceased and an attack being made upon him by deceased with a knife, and appellant backing into the bathroom and possessing himself of a baseball bat; and coming out of the bathroom, he struck the deceased with the baseball bat three or four times and then left; that the deceased accused appellant of going with his (deceased's) wife.

The trial court gave an exhaustive charge on the law as called for by the facts shown, defining murder with malice, murder without malice, assault to murder, aggravated assault and simple assault, as well as the law of self-defense, and we find no objections nor exceptions to such charge in the record.

There are eight bills of exception in the record, and they can be classified as being based upon four legal points.

It is complained that the trial court allowed the state to introduce the fact of appellant remaining silent relative to certain matters at the time he made a certain statement in writing in the nature of a confession. In such statement appellant admitted striking the deceased with a baseball bat, giving as his reason therefor that deceased was advancing upon him with a knife and threatening to kill appellant.

In his testimony upon the stand appellant amplified this self-defense testimony, adding thereto his fear of the deceased as a violent and dangerous man, and cited instances when deceased had told appellant of having killed others, as well as other difficulties told him by deceased. Whereupon appellant was asked on cross-examination by the state whether at the time of making this statement he had told of having known of such dangerous characteristics on the part of the deceased and of having had such conversations with deceased wherein he told

appellant of different times when he had wounded others and probably killed them. In answer thereto, appellant admitted that he was silent at the time of the taking of the written confession relative to such conversations with deceased, his answer being that he was not asked about such by the person to whom the statement was made. Appellant complains that such conduct upon the part of the state was proof of the fact that when accused of committing this offense, appellant remained silent, and such silence was used against him in this trial.

There was no objection made to the written statement of appellant, so the qualification to this bill shows, and no objection made to the question of the failure to tell the inquiring officer, nor to its answer until after such answer had been made, and no request made to exclude the answer, if such there was thereto. The answer itself seems to have been that "they never asked me" and we confess that we can see no harmful matter shown in such proceedings. Appellant was not silent when asked about this occurrence, but failed to tell all about it when first questioned. Finally he took the stand in his own behalf and testified fully as to conversations with the deceased at different times. "He was always *boosting* about what he would do to people. I was pretty sure he would use the knife." We think the basis of this complaint is the failure to state all of appellant's grounds of defense rather than a fact of silence when charged with such offense, and the citation of authorities given us of an accused's silence would not apply herein.

Bill No. 2 relative to the introduction of the written statement is multifarious as it also complains of the matters found in Bill No. 1; and it is also shown by the trial court's qualification that no objection was made nor exception reserved thereto, and thus the basis of exception fails.

Bill No. 4 complains because of the trial court's failure to allow appellant to introduce a purported copy of an indictment against Brady Johnson out of Smith County wherein it was charged that Brady Johnson had made an assault to kill one LeRoy Hood. It was not shown that the person charged with said offense was the deceased; nor was it shown that such purported copy was a true copy of an original indictment, nor that the same was properly verified and certified as being a correct copy of any alleged original indictment filed in Smith County.

Bill No. 5 is a peculiar one and seems to be but an objection filed after the trial of the case relative to the method and procedure laid down for the observance of courts in Texas concern-

ing a felony trial and its incidents. It is set forth therein that the state and its counties and municipalities provided salaried attorneys, investigators, and peace officers at a large expense for the purpose of looking after the enforcement of the law; that oftentimes, as in this case, this array of officers and employees endeavored to obtain a conviction of a man, friendless and poor and unable to obtain such services for his own benefit; that the law furnishes him with an attorney, with no hope of a pecuniary reward and no help in obtaining knowledge nor witnesses, no funds from the accused nor the state, and usually no time for investigation, and such circumstances, this bill contends, is not such as to guarantee a fair and impartial trial to one accused of crime and too poor to employ counsel. This bill seems to intend to convey the idea that the state should furnish an attorney paid to defend such person, as well as funds to conduct such an investigation as would be deemed proper under the circumstances. We do not think this can be characterized as a bill of exceptions, but seems to be merely a plaint showing the inadequacy of our present system of govering the trial of those unable to employ certain services necessary or desired at a trial. Suffice it to say that the statute provides no further than to give the trial court power to furnish the services of an attorney for his defense, which attorney receives no compensation, a sheriff to serve his desired witnesses, and a reporter to compile the record without any cost to the accused.

It is shown by the record that the attorneys representing appellant in his defense herein were appointed by the trial court, and they are to be commended for their diligent efforts in his behalf.

For this bill to be considered, there would have to be quite a change in the law governing a trial and its incidents in a capital felony case.

Bills Nos. 7 and 8 are but a repetition of former bills.

Finding no error shown herein, the judgment will be affirmed.