**William Parma GASSETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 49599.

Court of Criminal Appeals of Texas.

Jan. 21, 1976.

Rehearing Denied Feb. 11, 1976.

Jim Martin, Dallas, for appellant.

Henry Wade, Dist. Atty. and Richard W. Wilhelm and Hugh Lucas, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for murder with malice under Arts. 1256 and 1257, V.A.P.C. Trial was before a jury and the jury assessed a punishment of seven years' imprisonment.

This murder grew out of a family dispute. The deceased was a former husband of the appellant's wife and had waged a long, and finally successful, battle for custody of the couple's children. The evidence showed, however, that appellant's wife was illegally retaining custody of one of the children, and this prompted the deceased to make periodic trips into her neighborhood to search for signs of the child. Appellant killed the former husband on one of these periodic surveillance trips into appellant's neighborhood. The defense put great stock in showing the deceased to have a bad reputation as a husband and a father. Appellant's wife testified that the deceased had been arrested or indicted for desertion or non-support in Dallas, Odessa, and Clovis, New Mexico. In rebuttal, the State adduced evidence that appellant's wife was a bad mother. The State also attempted to prove that the deceased did not have the criminal record testified to by his former wife.

In this connection, the State called an investigator from the Dallas district attorney's office who offered testimony that the National Criminal Information Center (N.C.I.C.) computer revealed no record of arrests or indictments concerning the deceased. Appellant objected to this testimony on the grounds that it was hearsay and the proper predicate had not been laid. In this appeal, appellant contends that the proffered testimony, which finally came in over his numerous and thorough objections, was hearsay not within the exceptions to the hearsay

rule provided by Arts. 3731a or 3737e, V.T. C.A.

■ Appellant calls our attention to Sec. 5 of Art. 3731a, which governs admissibility of written statements to the effect that no record of a specified tenor exists. We note, however, that no written record was offered by the State or admitted into evidence by the court. Thus, the provisions of Sec. 5 obviously do not authorize the admission of this evidence. The witness offered oral testimony as to the contents of the N.C.I.C. computer print-out showing the non-existence of any arrests or indictments. Sec. 6 of Art. 3731a permits other methods of proving the lack of an entry in an official record if authorized by statutory or decisional law.

The witness's parol offer constituted common law hearsay. Whether or not it came within the statutory exception to the hearsay rule for business records is a question of first impression in this Court. In fact, our research has revealed no case in which any Texas court has construed Art. 3737e, Sec. 3, V.T.C.A., the law applicable to this case. Nor is there a comparable provision in the federal "business records as evidence" act. 28 U.S.C., Sec. 1732.

■ Art. 3737e, V.T.C.A., sets out the well-recognized "business records" exception to the hearsay rule. Subsection 1 thereof states three prerequisites to the introduction of a relevant business record or memorandum: (a) it must have been made in the regular course of business, (b) by an employee or representative with personal knowledge of its contents, (c) at or near the time in question. The record or memorandum may be offered by the entrant, custodian, or other qualified witness, even though he may lack personal knowledge of its contents. Art. 3737e, Sec. 2. *Lumpkin v. State*, 524 S.W.2d 302 (Tex.Cr.App.1975). "Business" is defined broadly enough in Sec. 4 to include the law enforcement agencies involved herein. *Coulter v. State*, 494 S.W.2d 876 (Tex.Cr.App.1973). Section 3 permits *testimony* as to the absence of such

a record or memorandum and would seem to control the situation at bar. The only prerequisite stated in Sec. 3 to the introduction of such testimony showing the non-existence of an act, event, or condition is that the judge must find that such act, event, or condition would otherwise be recorded and preserved in the ordinary course of business at or near the time in question. Presumably the testimony contemplated by Sec. 3 should be given by the "entrant, custodian or other qualified witness" mentioned in Sec. 2.

■ In the case at bar, the witness did not show that the arrests and indictments which he said did not exist would otherwise have been entered in the computer in the ordinary course of law enforcement business. Without such proof, his testimony would have no probative value at all. See *U. S. v. De Georgia*, 420 F.2d 889 (9th Cir. 1969). In discussing the N.C.I.C. and other computer systems, it has been said:

> "The major problems of the developing crime data networks are ones of controlling the accuracy, accessibility, scope and uses of crime information. Much of the basic data in such systems consists of local police reports, arrest records, rap sheets, and court records which are often inaccurate and incomplete. . . . Incomplete information—recording a person's indictment without his subsequent acquittal, for instance, or failing to withdraw an outdated warrant—could subject innocent parties to continued police pick-ups and interrogations.

> \* \* \* \* \* \*

> Crime records in a centralized data network may be subjected to tampering or accidental destruction. . . . 'data saboteurs' could intentionally destroy or obfuscate the computer files on particular criminals or purposefully introduce false information on innocent parties into the system. Poorly trained computer operators or illdesigned systems might inadvertently 'dump' vital data records."

Katzenbach, Nicholas de B. and Richard W. Tomc, Crime Data Centers: The Use of Computers in Crime Detection and Prevention, 4 Colum. Human Rights L.Rev. 49, 52–53 (1972).

The chance that law enforcement officials in Odessa and Clovis, New Mexico, failed to enter information on arrests of and charges against deceased is not insubstantial. It was not even shown that the N.C.I.C. has computer terminals in Odessa or Clovis. The probative value of the witness' testimony is thus open to serious question. See *Romero v. State*, 493 S.W.2d 206 (Tex.Cr. App.1973) for expressions of similar concern about the reliability of polygraph examinations.

The witness, an investigator for the district attorney's office, stated that the "normal custodian" of the N.C.I.C. computer terminal was an employee of the sheriff's department who had initialed the print-out from which the witness was testifying. It would appear then that he was not the "entrant or custodian" contemplated by Sec. 2 although the judge might have found that he was an otherwise "qualified witness" to give the testimony. This conclusion would be supported by the fact that the witness had regular access to the N.C.I.C. computer terminal, understood how the N.C.I.C. computer system worked, and knew how to operate the terminal fixture in the sheriff's office. See *Railroad Commission v. Southern Pacific Company*, 468 S.W.2d 125 (Tex.Civ.App.1971) for a discussion of the requirements for "other qualified witness[es]" as well as other prerequisites to the introduction of such electronic records. However, it is apparent that the State did not adduce that part of the predicate specifically called for by Sec. 3. The witness' testimony therefore did not comply with the statute and amounted to nothing more than rank hearsay.

It remains to consider the harmfulness of this error. Appellant's defense relied heavily on proving the deceased's bad character. The primary defensive issues were murder without malice and self-defense. The marital and custody disputes between the deceased and appellant's wife were an integral part of the events leading to this killing. Appellant's wife, whose credibility was severely impugned by the erroneously-admitted testimony, was one of appellant's main witnesses. The only other instance in the record in which the State hinted that the deceased had no criminal record was also objected to by the appellant. And an investigator for the district attorney's office apparently quoting from an N.C.I.C. computer print-out would be clothed with much indicia of respectability. We are unable to conclude beyond a reasonable doubt that the error complained of could not have affected the verdict in this case.

The conviction is reversed and the cause remanded.

MORRISON, Judge (dissenting).

I dissent to my brother Roberts' opinion reversing this conviction on the basis of an incomplete predicate under Sec. 3 of Article 3737e, V.T.C.A.

The testimony showed that the witness had personal knowledge of the existence of a terminal in Odessa and the entry into N.C.I.C. records of all arrests in Odessa. He testified that Dallas County also had a N.C.I.C. computer terminal and the print-out he received that morning was created in the normal course of business. He stated that he had searched the records in the district attorney's office in Dallas County of all complaints in criminal actions filed in Dallas County since 1920. He also searched the records in the identification division of the Dallas County Sheriff's Office, where records are communicated on persons who are arrested anywhere in the country. Without stating what had been said, he testified that he had contacted the police department and records bureau in Clovis, New Mexico. On the basis of this testimony, the witness stated he had no knowledge of any arrests for the deceased.

Under these circumstances, the failure to prove that arrests are entered in N.C.I.C. records in the regular course of business in Clovis, New Mexico, was harmless error.

The judgment should be affirmed.

DOUGLAS, Judge (dissenting).

Appellant killed Dr. George Bob Sollock on July 11, 1973. Before the homicide there had developed a dispute between the deceased and his ex-wife, subsequently the appellant's wife, concerning the custody of one of the children of their marriage. The deceased gained custody of the child after a trial in Dallas County but the appellant's wife left town with the child and went to various parts of the country to circumvent the court order.

On the evening of the shooting, Dr. Sollock and his wife drove to the appellant's neighborhood to see if they could find the child. As they passed a house where they had seen the appellant's truck parked, they saw him get into his truck and follow them with the truck's headlights turned off. He followed them for a short while before he turned the lights on. After passing them, the appellant stopped his truck in front of them in such a way as to force them to the curb. He left his truck and walked toward the couple's car with a gun in his hand. As he approached the car, the deceased reached under the car seat for a derringer that he kept there. Appellant reached the car, pointed his gun at the deceased's head and dared the deceased to get out of the car. The deceased got out of his car holding the derringer behind him and told the appellant that he had a gun also. At that point the appellant shot the deceased in the chest.

Roy Messick, a witness called by appellant, testified he was watching appellant's house to prevent burglaries. He testified that he heard a knock on the door and when he opened it appellant said: "Roy, I caught a man on my property snooping around and I chased him down here and then shot the son-of-a-bitch."

The majority reverses this conviction because of the admission of testimony offered by the State in its attempt to rebut the testimony given by the appellant's wife concerning the deceased's criminal record. The State called an investigator from the district attorney's office who testified that he had received a computer print-out from the National Criminal Information Center (N.C.I.C.) showing that the Center had no record of arrests or indictments relating to the deceased. The appellant objected to this testimony on the grounds that it was based on hearsay, that no proper predicate had been laid for the introduction of the witness' testimony and that the witness was not the custodian of the N.C.I.C. records.

It should not be necessary to decide if the testimony came within the business record exception to the hearsay rule as set out in Article 3737e, V.T.C.A., [more specifically, Section 3 of Article 3737e dealing with testimony as to the absence of any record or memorandum]. This testimony was introduced to rebut the appellant's wife's testimony concerning the indictment and arrest of the deceased for criminal desertion. The wife's testimony itself was not properly admitted. In *Morgan v. State*, 515 S.W.2d 278 (Tex.Cr.App.1974), this Court held that it was not proper for a witness to testify that another was convicted without the records being introduced. Her testimony about indictments had nothing to do with any defensive issue in this case. The witness Messick testified that appellant said that he had seen a man snooping around his property and he chased him and shot the son-of-a-bitch. Appellant made a similar statement to an officer before he was arrested. After appellant testified he stated that he shot Dr. Sollock in self-defense, the court instructed the jury on self-defense. The trial judge was very patient in permitting evidence of several custody trials involving the children of the deceased. If there were indictments they were immaterial to any issue in the case. There was no objection that the witness was being impeached upon

an immaterial matter and appellant points this out in his brief.

Prior acts of violence or misconduct which show the violent character of the deceased can be admitted in certain limited circumstances. *Nichols v. State,* 504 S.W.2d 439 (Tex.Cr.App.1974). In this case, however, the prior record sought to be introduced would not show the violent nature of the deceased. Criminal desertion or nonsupport cannot be characterized as crimes of violence. Such crimes, in and of themselves, could not be said to indicate that the deceased was the aggressor at the time of the killing and should not be admissible. See *Jackson v. State,* 141 Tex.Cr.R. 251, 147 S.W.2d 1078 (1941). Even if the arrest and indictment did show the violent nature of the deceased more would be required in way of proof than the hearsay testimony of the wife. See *Everhart v. State,* 154 Tex. Cr.R. 291, 226 S.W.2d 637 (1950). See *Morgan v. State,* supra.

In view of the lack of probative value of the wife's testimony, *Mendoza v. State,* 522 S.W.2d 898 (Tex.Cr.App.1975), and the amount of other testimony dealing with the violent character of the deceased by Joan Gassett's father, the admission of the testimony concerning the computer print-out, if error, was harmless error. See *Warren v. State,* 514 S.W.2d 458 (Tex.Cr.App.1974).[1] The testimony of appellant's wife was rebutted by her own daughter. The daughter testified that Dr. Sollock was not a man of violent character but that her mother was.

There being no reversible error, the judgment should be affirmed.

1. The jury had appellant's admission that he killed the deceased. Appellant followed the deceased, curbed his car and shot him. Appellant testified that he ended the custody matter when he killed the deceased. Appellant also admitted that he sent a bill to the wife of the deceased for $160 because he was required to be present at a hearing involving the murder case and he missed a day of driving a truck. This is included to show what the jury had before it to show harmless error.