Carl **MORGAN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 48585.

Court of Criminal Appeals of Texas.

July 2, 1974.

Rehearing Denied Nov. 13, 1974.

David E. Holt, Pampa, for appellant.

Otis C. Shearer, County Atty., Booker, Jim D. Vollers, State's Atty., and Larry Gist, Asst. State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

The conviction was for cattle theft; the punishment, assessed by the jury, four (4) years.

In his sole ground of error, appellant complains that the trial court committed reversible error at the punishment stage of the trial by admitting into evidence testimony concerning a previous conviction of the appellant in the absence of proper evidence that the conviction testified to was a valid and final conviction. We agree.

During the punishment stage of the trial, the State introduced into evidence a prior Oklahoma judgment of conviction for cattle theft. DeWayne Cates, a witness at the previous trial, took the stand and identified appellant as the defendant in the Oklahoma proceedings. Said conviction was properly proven, and no complaint is made thereof. For our purposes we will call this the Arnett conviction.

After the State had rested, appellant called Mrs. Morgan, his mother, to the

stand to testify concerning the hardships and burdens of appellant's life. During her testimony, Mrs. Morgan admitted that appellant had been previously convicted of cattle theft and had spent approximately fifteen months in the Oklahoma penitentiary. In the cross-examination of Mrs. Morgan, the State's attorney first asked her if her son had been convicted of cattle theft in Oklahoma more than one time. Mrs. Morgan answered, "No, Sir." The prosecutor then asked if she knew anything about a second, prior trial that took place in Buffalo, Oklahoma. Mrs. Morgan stated that she knew about it but had not been present. When asked if she knew the results of that trial, she said she really didn't know what the results were and then voluntarily added, "I know they brought up three different things on one group of cattle, and had him staying in three different places, which looked like it was very unfair." The State asked no further questions of Mrs. Morgan. Neither the State nor the appellant objected to any part of her testimony.

At the conclusion of Mrs. Morgan's testimony, the State recalled DeWayne Cates who testified that he had been a witness at the Buffalo trial and that appellant had been the defendant. Appellant's counsel then made the following objection:

"Your Honor, we are going to object to this line of questioning unless counsel has any authenticated copies of judgments of convictions, or anything in that regard."

The State's attorney admitted that he did not have any such authenticated judgment but urged that the questions were proper in view of the answers given by Mrs. Morgan. Appellant's objection was overruled, and Cates was permitted to testify that appellant had been found guilty of cattle theft at the Buffalo trial and that the *jury* had sentenced appellant to three years. Cates also denied that the Buffalo trial had involved the same offense as that involved in the Arnett conviction. No fur-

ther questions were asked. It is this testimony that appellant complains of.

Appellant's objection was directed to the failure of the State to prove that appellant had been convicted of any crime as a result of the Buffalo trial. It was the same as saying, "We object to this inquiry into the proceedings at Buffalo, unless the State is able to offer and does offer some satisfactory proof that the trial resulted in a final conviction."

■ Article 37.07, subd. 3(a), Vernon's Ann.C.C.P., authorizes the State to offer evidence of the prior criminal record of the defendant at the punishment stage of the trial. The statute defines the term "prior conviction" as meaning "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any conviction material to the offense charged." Admissible evidence of a defendant's prior criminal record, under the statute, is limited to proof of final convictions.

■ We construe the term "conviction," as used in Article 37.07, to contemplate something more than a jury's verdict and assessment of punishment. No conviction, final or otherwise, has resulted until the trial court has entered judgment and sentenced the defendant, where sentences are required. Absent a showing that a conviction has resulted, the question of finality of the conviction is not reached.

■ The State urges that the testimony of Cates, either alone or in conjunction with Mrs. Morgan's testimony, properly establishes a prior final conviction. The testimony of Cates shows no more than that the Buffalo jury returned a verdict of guilty and assessed the punishment at three years. There is no evidence that the trial court entered judgment and sentenced appellant. It is true that Mrs. Morgan testified that appellant had been confined to the Oklahoma penitentiary some fifteen months for cattle theft, but at the time she so testified only the Arnett conviction was

before the court. No mention had been made of any alleged conviction at Buffalo. The natural inference is that Mrs. Morgan was speaking of the results of the Arnett conviction. There is nothing in the record to connect her testimony about appellant's imprisonment with the trial at Buffalo. Mrs. Morgan's testimony to the effect that she knew of the trial at Buffalo but did not know the result in no way connected the two. Such testimony was no evidence at all that appellant had actually been convicted at Buffalo.

■ Even if proof of a jury's verdict of guilty were sufficient to show that appellant had been previously convicted, without a showing that he had been sentenced, there would be no proof of the finality of that conviction. In White v. State, 171 Tex.Cr.R. 683, 353 S.W.2d 229, we said:

> "In a felony case, the sentence is the final judgment of conviction, without which there is no final conviction . . . We know of no way to show a final judgment in a felony case other than to also show the sentence."

In that case we defined "sentence" by quoting old Article 737, V.A.C.C.P. The same definition presently appears substantially unchanged in Article 42.02, V.A.C.C.P.:

> "A 'sentence' is the order of the court in a felony or misdemeanor case made in the presence of the defendant . . . and entered of record, pronouncing the judgment, and ordering the same to be carried into execution in the manner prescribed by law."

In *White*, the State had introduced certified copies of prior judgments at the punishment stage of the trial for purposes of enhancement. The court held that, without proof that the defendant had actually been sentenced, there was no showing that a final conviction had resulted, and the evidence of the prior conviction was, therefore, inadmissible. There is no reason why the same rule that applies to proof of a prior conviction for enhancement purposes should not apply also where the State is seeking to prove a prior conviction as part of a defendant's criminal record under the provisions of Article 37.07, V.A. C.C.P.

■ Though a judgment and sentence are two distinct and separate things, the sentence must be based on a judgment and without a judgment the court is not authorized to sentence the defendant. Scott v. State, Tex.Cr.App., 461 S.W.2d 619; Horn v. State, 117 Tex.Cr.R. 22, 35 S.W.2d 145.

■ The one stands upon the other. The absence of a judgment invalidates a sentence, and without a sentence no final conviction has resulted from the trial.

The State argues that the testimony of Cates was proper in rebuttal and impeachment of Mrs. Morgan's testimony. Citing Gilmore v. State, Tex.Cr.App., 493 S.W.2d 163, and Ames v. State, Tex.Cr.App., 499 S.W.2d 110, the State contends the rule to be that, where a witness leaves the impression that a defendant has committed no offense other than the one in question, the State may refute such testimony by bringing in evidence of such other offenses. We find it significant that the present case is not one in which the defendant himself took the witness stand or offered some other witness to make blanket statements concerning his exemplary conduct so as to warrant the introduction of prior offenses without proof of final conviction. It is also significant that it was the State and not appellant who opened the inquiry into prior convictions in addition to the Arnett conviction and that Mrs. Morgan readily admitted knowledge of the existence of the Buffalo trial when asked by the prosecutor. Her statement concerning "three different things on one group of cattle" was nonresponsive and could have been cured by a proper objection and motion that the jury be instructed to disregard.

■ The State contends that, in any event, appellant was not prejudiced by the

testimony concerning the alleged Buffalo conviction because he had been previously convicted of a felony and was not eligible for a probated sentence, and because the jury gave him only four years. At the punishment stage of a trial for cattle theft, the jury may assess the penalty for any number of years from two to ten. The very purpose for introducing evidence of a defendant's prior criminal record is to encourage the jury to assess a greater, rather than a lesser, number of years. Under such circumstances, improper evidence of a prior charge or conviction before the jury is inherently prejudicial.

We reverse the judgment and remand the cause.

Opinion approved by the Court.

MORRISON and DOUGLAS, JJ., dissent.

DOUGLAS, Judge (dissenting on State's motion for rehearing).

The majority overrules the State's motion for rehearing without written opinion. At the penalty stage of the trial the State proved that appellant had been convicted for the offense of cattle theft in Arnett, Oklahoma and had served his sentence.

The reversal was because of alleged error at the penalty stage of the trial because the State did not show that other prior trials resulted in final convictions even though there was no objection on that ground. Even if there had been a proper objection, no reversible error would be shown because the testimony offered was for the purpose of impeaching appellant's mother or correcting a wrong impression given by her.

The entire testimony of Louella Morgan, appellant's mother, is as follows:

"Q. (By Mr. Holt, Defense Counsel) Will you state your name, please?

"A. Louella Morgan.

"Q. Where do you live, Mrs. Morgan?

"A. In Alva, Oklahoma.

"Q. Are you the mother of Carl Morgan?

"A. Yes, I am.

"Q. Mrs. Morgan, you have been here all during this trial—or today, haven't you?

"A. Yes, sir.

"Q. What—the reason I have asked you to testify is to furnish the Jury with some additional information concerning the Defendant.

How old is Carl Morgan?

"A. Thirty-six.

"Q. And he is your natural son, is that correct?

"A. Yes, sir.

"Q. Did he live and grow up in Alva?

"A. On our ranch, Northwest of Alva.

"Q. Now, what do you mean when you say 'on your ranch'? How much property are you talking about?

"A. We have three Quarters and a Forty, and he was born and raised out there, and attended twelve years of school out there.

"Q. Is Carl's father living?

"A. He is living. He is in very bad shape. He was born a cripple. He then had polio. He is seventy-five years of age, and he is in a walker. And his memory is very bad. He has had a number of serious surgeries.

"Q. Is he an invalid?

"A. Yes, he is. Only in a walker can he take a step.

"Q. Now, Carl has been convicted previously, and has served approximately—well, some amount of time,

approximately fifteen months in the Oklahoma Penitentiary, is that correct?

"A. That is correct.

"Q. And that was for the offense of cattle theft, is that right?

"A. As far as I know.

"Q. Has Carl ever been married?

"A. Yes, he has.

"Q. Does he have a family?

"A. He had two wonderful little boys, and which one of them was shot and killed the night before Hallowe'en last year; two wonderful little boys.

"Q. Is he currently married at this time?

"A. No, sir.

"Q. Was he divorced by his wife?

"A. Yes, sir.

"Q. Was this while he was in prison in Oklahoma?

"A. Just before he left.

"Q. And after this took place, one of his children was killed, is that correct?

"A. Yes, sir. The loaded pistol was laid down by the little children, and the little children turned right to it, and one was killed.

"Q. And where was Carl when this happened?

"A. He was at McAlester.

"Q. Since he was released from prison, Mrs. Morgan, what has Carl been doing?

"A. He has been working for the Railroad, and they called me from Amarillo, and said that he was one of the best that they had ever had. He was very dependable. And they didn't feel like they could get along without him. They called me from Amarillo.

"Q. Has he been, in addition to working for the Santa Fe Railroad, has he been helping with the farm?

"A. With his daddy, and on the farm.

"Q. Did he serve in the Service after he got out of school?

"A. He served nearly two years in Germany after he got out of school. He served almost two years overseas.

"Q. Did he receive an Honorable Discharge?

"A. Yes, he did.

"MR. HOLT: Pass the witness.

"CROSS EXAMINATION BY MR. SHEARER (Prosecutor):

"Q. Has Carl been convicted of cattle theft in Oklahoma more than one time?

"A. No, sir.

"Q. Were you here when the evidence as to an Arnett conviction came in?

"A. No, sir. This is the only time I have been here.

"Q. I see. Do you know anything about a trial that took place in Buffalo?

"A. I knew when it took place. I wasn't there. My daughter, I believe that was the place that my fine daughter was there with him at that time. I wasn't able to go.

"Q. Do you know the results of that trial?

"A. Well, I really don't know just—I know they brought up three different things on one group of cattle, and had him staying in three different places, which looked like it was very unfair."

It is noted that she testified that appellant had an honorable discharge from the service, and that he was a dependable person. She testified on direct examination that he had been to the penitentiary for cattle theft. She did not testify when or where such conviction was had.

She was asked on cross-examination without objection if appellant had been convicted more than one time. She answered, "No." When she was asked if she knew about the trial that took place in Buffalo, she testified that she knew it took place, but she was not there. When asked about the results of that trial, she gave an unresponsive answer, "Well, I really don't know just—I know they brought up three different things on one group of cattle and had him staying in three different places, which looked like it was very unfair."

After this, DeWayne Cates was recalled by the State and the following occurred:

"Q. (By Mr. Shearer): DeWayne, do you have any knowledge concerning whether or not a trial ever took place in Buffalo, concerning Carl Morgan?

"A. Yes, sir.

"Q. What was the charge, if any, in that trial?

"A. Cattle theft.

"Q. What was the—who was the named Defendant?

"A. Carl Morgan.

"MR. HOLT: Your Honor, we are going to object to this line of questioning, unless Counsel has any authenticated copies of Judgments of convictions, or anything in that regard.

"MR. SHEARER: I would represent to the Court I do not have any such authenticated Judgment, and it occurred to me maybe this is the type of question that is proper, in view of the answer given by Mrs. Morgan.

"THE COURT: The Court would allow the question.

"Q. (By Mr. Shearer): Was Carl the named Defendant there?

"A. Yes, sir.

"Q. Were you present when the Jury brought in a verdict?

"A. Yes, sir.

"Q. And what was that verdict?

"A. Guilty.

"Q. Now, were you witness in both those two trials, Arnett and Buffalo?

"A. Yes, sir."

It can be seen there was no objection that the trials did not result in final convictions.

Mrs. Morgan was called for the express purpose of giving additional information concerning appellant. She told of a conviction for cattle theft, leaving the impression that there was only one. She did not relate which conviction. She, as most mothers would, wanted to show the appellant in the best light that she could before the jury.

The State under previous decisions of this Court was permitted to show that appellant was not as good a citizen as she had represented him to be.

The testimony of Cates refutes the testimony of Mrs. Morgan that appellant was held on three charges involving one group of cattle.

The majority should follow the reasoning in Childs v. State, 491 S.W.2d 907 (Tex.Cr.App.) In that case the defendant sought probation. His father testified that if his son were granted probation he would keep him at home, employ him and supervise his conduct and assist him in exemplary conduct. The father also testified that the conduct had been good while he had been at home. On cross-examination,

he was asked if " 'he had heard' " that his son had been indicted for robbery and for possession of marihuana and was living with a prostitute who was also a heroin addict.

Childs contended that the father's testimony was not that of a reputation or character witness and, therefore, the questions and answers were improper. This Court noted that the testimony of the father of Childs was geared toward persuading the jury to grant him probation by showing them his good character and law abiding habits. This Court held:

> "Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community. . . ."

The testimony of Mrs. Morgan in the present case was to show the good traits of appellant in the best light that she could. The State, as in the Childs and other cases, should have been able to counteract that testimony with proof relevant to disprove the false impression. See Salazar v. State, 494 S.W.2d 548 (Tex.Cr.App.1973); Navajar v. State, 496 S.W.2d 61 (Tex.Cr.App. 1973), and Aldrighetti v. State, 507 S. W.2d 770 (Tex.Cr.App.1974). See also Thomas v. State, 477 S.W.2d 881 (Tex.Cr. App.1972), and especially the concurring opinion.

The State's theory at the trial was that the testimony of Cates was admissible in view of the testimony of Mrs. Morgan. Although all of the testimony of Cates is not true impeachment, it was a form of impeachment to contradict or disprove the impression left by the mother.

Where testimony of a prior conviction is for the purpose of impeachment, copies of the proceedings do not have to be admitted into evidence.

In 1 Branch's Ann.P.C.2d, Section 125, the correct rule is found. It is as follows:

> "If the object is only to impeach the witness, record evidence of his conviction is not necessary. Bratton v. State, 34 Crim. [Tex.Cr.R.] 477, 31 S.W. 379; Sipanek v. State, 100 Crim. [Tex.Cr.R.] 489, 272 S.W. 141."

In the Bratton case, supra, decided in 1895, the conviction was for horse theft. There it is written:

> "Appellant testified. Upon cross-examination, over his objections, the state proved he had been convicted and sent to the penitentiary for the theft of a horse; the objection being that the record was the best evidence. For the purpose this evidence was introduced, namely, to impeach the witness, the record was not necessary."

In the Sipanek case, supra, it is written:

> ". . . Oral proof of the conviction of the witness Gale was admissible, however, for the purpose of impeachment. Lights v. State, 21 Tex.App. 308, 313, 17 S.W. 428; Carroll v. State, 32 Tex.Cr.R. 431, 433, 24 S.W. 100, 40 Am.St.Rep. 786; and other cases collated in Branch's Ann.Tex.P.C., Section 167. . . ."

This rule was recognized and applied in Johnson v. State, 453 S.W.2d 828 (Tex.Cr. App.1970), where oral evidence of a conviction was used to impeach a witness. The following is taken from that opinion:

> " 'We object to any impeachment along this line, unless we can prove it by a Court record, which would be the best evidence.'

> "In 62 Tex.Jur.2d, Sec. 276, p. 256, is found:

> " 'Although the best evidence rule does not afford ground for objecting to a question designed to procure an admission from the witness as to a conviction against him, since that rule has no application in those circumstances, the rule does not exclude oral proof of a convic-

tion otherwise than by an admission of the witness himself * * *.' "

The testimony of Cates in the present case was admissible to counteract that given by appellant's mother and, as heretofore shown, written proof of the prior convictions was not required.

The State's motion for rehearing should be granted and the conviction affirmed.

MORRISON, J., joins in this dissent.