Louis Dee YOUNG, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 05–86–01320–CR.

Court of Appeals of Texas, Dallas.

April 27, 1988.

Rehearing Denied June 10, 1988.

Lawrence G. Boyd, Dallas, for appellant.

Michael A. Klein, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

WHITHAM, Justice.

Appellant appeals a conviction for possession of a firearm by a felon. The jury assessed punishment, enhanced, at life in the Texas Department of Corrections. In his sixth point of error, appellant contends that the evidence is insufficient to prove "possession" of a handgun as alleged in the indictment. In his seventh point of error, appellant contends that the evidence is insufficient to prove that appellant had a prior conviction involving violence and threatened violence to a person. We find no merit in either of appellant's two challenges to the sufficiency of the evidence. In his first point of error, appellant contends that the trial court erred in failing to grant his timely motion for a mistrial because of the prosecutor's prejudicial jury argument at the guilt or innocence stage of the trial injecting harmful unsworn testimony before the jury. We agree. Accordingly, we reverse and remand.

### Sufficiency of the Evidence as to Possession

■ The elements of the offense in the present case are appellant (1) intentionally and knowingly (2) possessed away from the premises where he lived (3) a firearm, namely, a handgun (4) after he had previously been convicted of a felony involving violence or threatened violence—aggravated robbery. *See Hazel v. State*, 534 S.W. 2d 698, 700 (Tex.Crim.App.1976). In the present case, the indictment alleges that appellant knowingly and intentionally possessed a firearm, to wit: a handgun, away from the premises where he lived after he had previously been convicted of a felony involving an act of violence and threatened violence to a person, namely, aggravated robbery. Hence, intentionally and knowingly are elements of the offense before us. In this connection, we note that this is a circumstantial evidence case. The standard for reviewing the sufficiency of the evidence on appeal is the same for direct and circumstantial evidence cases; and that is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim. App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985).

■ The State relies on the following evidence as adequate to support the verdict. Indeed, we quote the State's entire response to appellant's sixth point of error challenging the sufficiency of the evidence to prove possession:

Appellant was charged with possession of a firearm by a felon. At trial evidence was introduced which showed that Appellant was arrested in a car that he was driving and next to him was a bag containing two pistols. The pistols were fully loaded and placed at the top of the bag on top of clothing. This alone is sufficient to sustain the conviction for the offense. *Christian v. State*, 686 S.W.2d 930 (Tex.Crim.App.1985).

(citations to record deleted). Hence, the State maintains that appellant's arrest in a car he was driving in which there was a bag next to him containing two fully loaded handguns placed on top of clothing alone is sufficient to sustain the offense of possession of a firearm by a felon. We disagree. Nevertheless, we conclude that other facts in the record combine to provide sufficient evidence to sustain the conviction.

■ At the outset, we note that we decide a case involving the element of unlawful possession prescribed in the possessory offense of unlawful possession of a firearm by a felon. TEX.PENAL CODE ANN. § 46.05 (Vernon 1974). We do not decide a case involving the element of "carrying on or about [the] person" contained in section 46.02. TEX.PENAL CODE ANN. § 46.02 (Vernon 1974). *Christian* involved an offense under § 46.02. We conclude, therefore, that the State's reliance upon *Christian* is misplaced. We reach this conclusion in light

of *Christian's* teaching. In *Christian*, the court specifically declined uncritically to equate the element of "carrying on or about [the] person," contained in section 46.02 of the Penal Code, with the element of unlawful possession prescribed in the possessory offenses listed in the Controlled Substances Act and the offense found in section 46.05 of the Penal Code. TEX. REV.CIV.STAT.ANN. art. 4476–15, §§ 4.03–4.044, 4.051, 4.07 (Vernon Supp. 1988); *see Christian*, 686 S.W.2d at 932. Therefore, we conclude from *Christian* that we are not to treat *Christian* as controlling in the possessory offense case before us. Instead, we read *Christian* to instruct us to analyze the sufficiency of the evidence in the possessory offense found in section 46.05 under rules adopted for determining the sufficiency of the evidence in cases of possession of a controlled substance. *See Christian*, 686 S.W.2d at 932. In cases too numerous to cite, the Court of Criminal Appeals has held that to establish unlawful possession of a controlled substance the State must show (1) that the accused exercised care, control and management over the contraband and (2) that the accused knew the matter possessed was contraband. *Christian*, 686 S.W.2d at 932. Furthermore, whether the State's theory is sole or joint possession, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Christian*, 686 S.W.2d at 932. Thus, we turn to the evidence that would affirmatively link appellant to the two handguns in such a manner and to such an extent that a reasonable inference may arise that appellant knew of the existence of the two handguns and that appellant exercised control over the two handguns. Testimony by witnesses was the primary source of evidence presented in this case to establish affirmative links. Much of this testimony was conflicting. In this regard, we recognize that the jury is the sole judge of the credibility of the witnesses and may accept or reject any part or all of the testimony given by State

or defense witnesses. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App.1978). With this in mind, we view the evidence in the light most favorable to the verdict.

On April 21, 1986, at 9:00 a.m., Police Officer Cawthon observed appellant in an automobile almost run a stop sign. Appellant was not wearing a seat belt. Cawthon stopped appellant. Cawthon ran a driver's license check and received a report that appellant's license was suspended. Cawthon arrested appellant for driving a vehicle while his license was suspended. Police officers patted down appellant and seated him in the back of a squad car. Officers then inventoried the contents of appellant's vehicle. The inventory produced an unzipped black bag containing two loaded handguns "sticking butt up," a glass case full of syringes, a scale, and a small vial. The vial contained amphetamine. The two handguns were seen on *top* of clothing also found in the bag. The scale was found under the clothing. Cawthon found the bag "on the little bump" right behind the driver's seat, an elbow's reach away from the appellant. The vehicle searched was a small "hatched-back" vehicle in which the back seat lies down.

Thus, we reach the facts as to how appellant happened to be in possession of the automobile. We learn some of these facts through defense witness Michelle Brock. The automobile belonged to Steve Richardson. In the early morning of appellant's arrest, Brock drove the car to the house of her friend, Rita McIninch, at approximately midnight. Previously, Brock put the bag into the car on the floorboard of the front seat. Brock claimed that the bag belonged to her and Richardson. Brock packed the bag before placing it in the car. The two handguns were packed down at the *bottom* of the bag. Brock did not place the scales in the bag. Brock testified that if scales were found in the bag, somebody else put them there.

When Brock sought to leave McIninch's house, the car would not start. Brock locked the car and left it at McIninch's house at 1:00 a.m. Brock left to get a part for the car but never made it back because

she was arrested on an outstanding burglary warrant. Appellant was sent to pick up the car. The car could be "push started." It would take two or three minutes at the most to travel by car from McIninch's house to the location of appellant's arrest. From testimony of defense witness McIninch, we learn that McIninch first saw appellant at her house at 8:30 a.m. and again at ten to fifteen minutes before 9:00 a.m., that Billy Cooperhand assisted appellant in pushing the car, that the two men got the car started and that appellant drove away.

■ Thus, our inquiry turns on whether the State met its burden to show that appellant knew that he was in possession of a firearm at the time and occasion of his arrest and exercised control over the firearm. We begin by noting the operative word "possesses" used in section 46.05. As pointed out earlier, possession is the mens rea element of the offense. As with all elements of an offense, the State must prove the mens rea element of an offense beyond a reasonable doubt. *Humason v. State*, 728 S.W.2d 363, 366 (Tex.Crim.App. 1987). In reviewing sufficiency of the evidence on appeal, the Court of Criminal Appeals has followed the standard established by the United States Supreme Court: whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Humason*, 728 S.W.2d at 366. For cases involving circumstantial evidence, an additional principle of appellate review applies. A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of guilt of the defendant. *Humason*, 728 S.W.2d at 366. In addition, proof which amounts only to a strong suspicion or mere probability is insufficient to support a conviction. *Humason*, 728 S.W.2d at 366. In the present case, as in *Humason*, the State proved that the accused was the sole occupant of a vehicle with a bag lying within reach of the accused. In the present case, as in *Humason*, the bag contained items the law prohibited the accused from pos-

sessing. In the present case, as suggested by *Humason*, it can be argued that the record contains evidence of several affirmative links between appellant and the handguns from which the jury could conclude beyond a reasonable doubt that appellant knowingly possessed the handguns.

■ As noted, we must view the evidence in the light most favorable to the verdict. Guided by this standard, we conclude that any rational trier of fact could have found beyond a reasonable doubt that ten or fifteen minutes before being stopped by the police appellant entered a locked car; that a bag was located in the car on the floor board of the front seat; that the bag contained clothing and two handguns; that the two handguns were under the clothing at the bottom of the bag; that the bag contained no scales; that while traveling between McIninch's house and the location of his arrest, appellant opened the bag, moved the two handguns from the bottom of the bag under clothing, placed the two handguns on top of the clothing, and placed the scales under the clothing, that appellant then placed the unzipped bag in the back of the car right behind the driver's seat, and that appellant moved the handguns to the top of the bag for protective purposes related to the syringes and the vial of amphetamine. Therefore, we conclude that the evidence affirmatively links the appellant to the two handguns in the bag in such a manner and to such an extent that a reasonable inference may arise that appellant knew of the handguns' existence and that appellant exercised control over the handguns. Consequently, we conclude further that any rational trier of fact could have found beyond a reasonable doubt that at the time of his arrest appellant knowingly and intentionally possessed a handgun. We reason that the cumulative force of all the incriminating circumstances was sufficient for the jury, as the trier of fact, to decide, as they did, that at the time of his arrest, appellant intentionally and knowingly possessed a handgun and exercised control over the handgun. *See Vaughn v. State*, 607 S.W.2d 914, 921 (Tex.Crim.App. 1980). Therefore, we conclude that in the

present case the record contains evidence of several affirmative links between appellant and the handguns from which the jury could conclude beyond a reasonable doubt that appellant knowingly possessed the handguns and exercised control over the handguns. Indeed, we conclude further that in the present case the evidence of affirmative links between appellant and the handguns excludes every other reasonable hypothesis except that appellant knowingly possessed the handguns. Thus, in the present case, we reason that we do not have before us proof which amounts only to a strong suspicion or mere probability. Consequently, we disagree with appellant that the facts and outcome of *Humason* are controlling in the present case. Hence, we conclude that the evidence was sufficient to prove "possession" of a handgun as alleged in the indictment. We overrule appellant's sixth point of error.

### Sufficiency of the Evidence as to Prior Conviction

■ In his seventh point of error, appellant contends that the evidence is insufficient to prove that the appellant had a prior conviction involving violence and threatened violence to a person. Citing *Morgan v. State*, 515 S.W.2d 278, 280–81 (Tex.Crim. App.1974), appellant argues that a prior conviction is not admissible without evidence of the imposition of sentence. In this connection, appellant points to a provision of the Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1987). We agree with appellant's reading of *Morgan.* The term "conviction" as used in article 37.07 means something more than a jury's verdict and assessment of punishment. *Morgan*, 515 S.W.2d at 280. No conviction, final or otherwise, has resulted until the trial court has entered judgment and sentenced the defendant, where sentences are required. *Morgan*, 515 S.W.2d at 280. In the present case, appellant insists that the State failed to prove that appellant was sentenced in the prior case. Thus, appellant maintains that the evidence is insufficient to prove a prior conviction involving violence and threatened violence to a person. Hence we reach the question of whether the record contains evidence of imposition of a sentence in the prior case.

■ Max Chester was the State's fingerprint expert. State's exhibit 1, admitted without objection, contains appellant's fingerprints taken during trial. State's exhibit 2 and State's exhibit 2A (a copy of exhibit 2) were admitted for record purposes only. Thus, the jury never knew the contents of these two exhibits. Exhibit 2 contains fingerprints made in 1976 for an individual under the name Louie D. Young, Jr. (In the present case, appellant was indicted as "Louis D. Young, Jr.,") State's exhibit 3 appears to be a police pen packet containing among its papers a copy of the minutes of the Criminal District Court No. 3 of Dallas County, Texas, Cause F–76–7180– QJ, styled "The State of Texas v. Louie D. Young, Jr.," July term 1977, September 9, 1977. In our record, State's exhibit 3 contains no fingerprints, and no comparison to prints on State's exhibit No. 1 were made at trial. The State offered exhibit 3 for record purposes only. Thus, *at this point* the jury never knew the contents of State's exhibit 3. Chester, however, did testify that the cause number on State's exhibit No. 2 and the cause number on the "blue back" on State's exhibit No. 3 were the same except for the addition on the "blue back" of the letter "Q," which was placed there for administrative purposes. (The "blue back" is not in our record.)

Chester also testified before the jury that the fingerprints from State's exhibit No. 1 and from State's exhibit No. 2 were made by one and the same person. In addition, without objection, the prosecutor put the following question to the State's fingerprint expert and obtained the following answer:

[Prosecutor]: One final question. As the result of your fingerprint analysis and the result of looking over the blue back and all of the record involved in this case, did you draw a conclusion as to whether or not this man, Louis D. Young, Jr. is one and the same Louie D. Young, Jr., who was convicted of aggravated robbery in 1976?

[State's Expert]: That would be my belief, yes.

Next, we find in the record that just prior to resting its case-in-chief the prosecutor, without objection, read to the jury the following:

[Prosecutor]: Minutes of the Criminal District Court No. 3 of Dallas County, Texas, Cause F–76–7180–QJ, styled the State of Texas versus Louie Dee Young, Jr., July Term, 1977, September the 9th, 1977. Judgment: The Defendant having been indicted in the above-entitled and numbered cause for the felony offense of aggravated robbery, a first-degree felony is charged in the indictment, it is therefore considered and adjudged by the Court that the said Defendant is guilty of the felony offense of aggravated robbery, a first-degree felony as charged in the indictment, and that the said Defendant committed the said offense on the 25th day of June, 1976, and that he be punished by confinement in the Texas Department of Corrections for five years.

The reader will note that in Chester's testimony he refers to the fact that State's exhibit No. 2 contains prints made in *1976*. The reader will note that in the prosecutor's above-quoted question to Chester, the prosecutor refers to the conviction "of aggravated robbery in *1976*." The reader will note that the minutes of the Criminal District Court No. 3 indicate a judgment and sentence of a "Louie D. Young, Jr." on September 9, *1977*, arising from an offense committed June 25, *1976*. In connection with the discrepancy between the years 1976 and 1977, we point out that appellant does not complain of this discrepancy in his challenge of the sufficiency of the proof of a prior conviction. Moreover, in connection with the difference in the first names "Louie" and "Louis," we point out that appellant does not complain of this difference in his challenge of the sufficiency of the proof of a prior conviction. Consequently, we conclude that the "Louie D. Young, Jr.," fingerprinted in 1976 was the Louis D. Young, Jr., before the trial court in this case and the appellant in this appeal. Furthermore, we conclude that the prosecutor misspoke in referring, in the above-quoted question to Chester, to a conviction "of aggravated robbery in 1976," and that the prosecutor intended to refer to the 1977 conviction of appellant established by the minutes of the Criminal District Court No. 3 of Dallas County, Texas.

For the above reasons, we conclude that the minutes of the Criminal District Court No. 3 of Dallas County, Texas, read by the prosecutor to the jury without objection, establishes imposition of a sentence upon appellant in a prior case of aggravated robbery. Therefore, it follows that the evidence is sufficient to prove that appellant had a prior conviction involving violence and threatened violence to a person. We overrule appellant's seventh point of error.

### The State's Jury Argument

In his first three points of error, appellant contends that the trial court erred in failing to grant his timely motion for a mistrial because of the prosecutor's prejudicial, manifestly improper and harmful jury argument at the guilt or innocence stage of the trial. Appellant briefs and argues these points together. Appellant does so because he maintains that extensive prosecutorial misconduct during argument advancing numerous improper remarks has so tainted the State's jury argument as to require reversal. Appellant concedes that arguably these points of error are multifarious. Nevertheless, we are able to discern appellant's argument under his first point of error. We conclude that appellant's first point of error is dispositive of this appeal. Thus for purposes of this opinion, we focus on but one aspect of the prosecutor's challenged remarks. We point to the prosecutor's argument in which he presents to the jury a scenario of hypothetical offenses sought to be committed by appellant at the scene of the arrest and then seeks to convict appellant of those offenses. We refer to the prosecutor's repeated efforts to offer his unsworn testimony that appellant sought to do violence to police officers present at his arrest and to urge the jury to convict appellant of offenses against police officers. We read

appellant's first point of error to complain of this action taken by the prosecutor.

▮▮▮ In his first point of error, appellant contends that the trial court erred in failing to grant appellant's timely motion for mistrial because of the prosecutor's prejudicial jury argument at the guilt or innocence stage of the trial of injecting harmful unsworn testimony before the jury. Appellant insists that the theme evident from the prosecutor's following remarks is that appellant, who had exited the car, wanted to reenter the car, obtain a weapon, and harm police officers:

[Prosecutor]: Now, why did he want to get back in, when they opened the hood, well, that is, he thought, I will just get a seat belt violation and I will get a ticket and I will be on my way, but you see when Officer Kraus came to the front he realized that the other officer, the one who was the backup, was running his name, running his name, and indeed he knew what that meant. He knew that they would find out that he was driving without a license and that would mean that he was going to get arrested. Once he got arrested the inventory search follows, and they find the guns, and they find the dope and he goes to the pen. He knows that, so what does he do? He gets right in Officer Kraus' face and says, look man, I've got to get back in that car. Get back over there. I've got to get back in the car, the gasoline is running, there is something wrong with the car, I've got to turn it off. Why? Maybe a third time, I've got to get back into that car. Why?

Ladies and Gentlemen, it was because he new [sic] the guns were in there and he knew if he got back in that car he could get to those guns, and then he could— then you take up on the kind of person that you already know that he is. He has been convicted of armed robbery.

[Defense Counsel]: Your Honor, I object to him arguing statements that are outside the record, Your Honor. Facts that are not in the record.

THE COURT: Sustain the objection.

[Defense Counsel]: Move that the Jury be instructed to disregard the statement.

THE COURT: Members of the Jury, disregard the comments of State's counsel.

[Defense Counsel]: We would ask for a mistrial.

THE COURT: Denied.

[Prosecutor]: It is a reasonable inference from the contact that happened and the words that could have been spoke, they've got their own words, but you get the general impression, this man was getting into the Officer's face, encroaching on his space, to get back in that car to get to those guns.

Now, what would have happened if he had gotten to those guns, an armed robber getting back into his car to get two firearms when the police are intent on taking him to jail.

[Defense Counsel]: Your Honor, I'm going to have to object to that.

THE COURT: Is that a reasonable deduction from the evidence?

[Prosecutor]: It is a reasonable deduction from the evidence, Your Honor, and common sense tells you what would happen thereafter.

[Defense Counsel]: Object to the sidebar comments.

THE COURT: Sustained.

[Defense Counsel]: Please admonish the Jury to disregard that.

THE COURT: Disregard the sidebar comments.

[Defense Counsel]: Ask for a mistrial.

THE COURT: Denied.

[Prosecutor]: Ladies and Gentlemen, I leave that to your reasonable deductions fo [sic] what would have happened if this Defendant had of gotten to these guns, but you heard Officer, or the comment about the Officers, that they were acting in bad faith, that they were going to send this man down to the penitentiary, no matter what.

Well, Ladies and Gentlemen, I will submit to you that what happened to you on the 21st day of April was good police work, one police officer—

[Defense Counsel]: I would object to bolstering.

THE COURT: I will overrule the objection.

[Prosecutor]: One police officer keeping this man from getting back to that car, away from those weapons and keeping the other officer out of trouble. What could have happened was a tragedy, an armed robber with weapons.

Now—

[Defense Counsel]: Your Honor, I would object again to his arguing facts outside the record.

THE COURT: Based on the premise of the statement, I will sustain the objection.

[Defense Counsel]: Please admonish the Jury to disregard it.

THE COURT: Disregard it.

[Defense Counsel]: I'd ask for a mistrial.

THE COURT: Denied.

[Defense Counsel]: Thank you.

[Prosecutor]: That explains to you, Ladies and Gentlemen, why the Defendant did inconsistent acts, he jumped out of the car and wanting to get back in, entirely consistent, doesn't make sense. Only makes sense when you think about it that he knew that these guns were here and he wanted to get away from the beginning until his attitude changed, and he realized that he had to get his hands on them, and that is why he wanted to get back in the car.

[Defense Counsel]: We'd have to object to him inserting his opinion in the record, Your Honor.

THE COURT: Sustained.

[Defense Counsel]: Ask the Jury be admonished to disregard it.

THE COURT: Disregard the statement of the State's Counsel.

[Defense Counsel]: We would ask for a mistrial.

THE COURT: Denied.

[Defense Counsel]: Thank you.

Appellant argues that the prosecutor was attempting to terrify the jury and inflame the jury's imagination as to the carnage which would have followed if appellant had obtained a gun from the car. Thus, appellant insists that the prosecutor was clearly now trying appellant for a fictitious attempted offense against police officers which only occurred in the vivid imagination of the prosecutor. On this record, we agree with appellant that the prosecutor in his jury argument tried appellant for a fictitious attempted offense against police officers which only occurred in the vivid imagination of the prosecutor. Offenses found in the vivid imagination of the prosecutor with no support in the record are outside the scope of proper jury argument. Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. *Franklin v. State*, 693 S.W.2d 420, 429 (Tex.Crim.App.1985). Therefore, the prosecutor's argument in the present case does not fall within one of the four general permissible areas. The appellant in the present case was charged with possession of a firearm by a felon, not, for example, attempted capital murder or resisting arrest. *See Wright v. State*, 609 S.W.2d 801, 806 (Tex.Crim.App.1980). While we do not hold that a defendant is entitled to an errorless or emotionless trial, we recognize the critical importance of convicting an accused only upon the evidence presented. *See Dakin v. State*, 632 S.W.2d 864, 868–69 (Tex.App.—Dallas 1982, pet. ref'd). Since the prosecutor clearly argued outside the record, we conclude that the prosecutor's remarks were improper and constitute error.

 Having concluded that the prosecutor's remarks were improper, we reach the question of whether the trial court's four instructions to disregard cured the error. Errors in argument can be cured by a prompt instruction to the jury to disregard. *Guerra v. State*, 478 S.W.2d 483, 486 (Tex.Crim.App.1972). Thus, we must consider the trial court's four instructions to disregard. We conclude that the trial court's four instructions to disregard the prosecutor's objectionable remarks did not cure the error. There ought to be a limit to the number of times a skunk can be thrown into the jury box with instructions not to smell it.

A prosecutor's special role in a case must be recognized. That role has been described before but bears repeating here. The Supreme Court of the United States in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), emphasized the special responsibility and status of the prosecutor thus:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

> It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

*Berger*, 295 U.S. at 88, 55 S.Ct. at 633. Another apt description appears in *United States v. Morris*, 568 F.2d 396, 402 (5th Cir.1978):

> The distinction between the earnest implorings of an advocate of conclusions the jury should draw from evidence and, on the other hand, the statement of counsel of what he believes, personally, about the case, a witness in the case, or any other issue is often not observed. The courts require adherence to the proper side of the line whenever the issue is presented, and such issues usually involve transgressions by prosecuting attorneys.

That is as it should be, for chances of prejudice are greater when prosecutors transgress. The prosecutor is not just a retained attorney; he is a public official occupying an exalted station. Should he be allowed to "testify" in closing argument, jurors hear the "expert testimony" of a trusted officer of the court, on, perhaps a crucial issue. On the other side may be appointed counsel, laboring valiantly to present all defenses available to the accused, who nevertheless may be unable to respond to the implied challenge by asserting his personal belief in his assigned client's innocence. The answer is, of course, that the personal conclusions of neither is of any moment; the conclusions to be drawn, by impartial jurors, from the evidence is at issue. The essence of this discussion concerning counsel's improper arguments is stated in DR 7–106(C) of the American Bar Association Code of Professional Responsibility, which states in pertinent part:

> In appearing in his professional capacity before a tribunal, a lawyer shall not:

> \* \* \* \* \* \*

> (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

Although the observations made in these two cases involve improper remarks by federal prosecutors, the same observations are applicable to state prosecutors.

 This explanation of the prosecutor's special role in a case must be understood in the context of the present case. Ordinarily, even when an argument exceeds the permissible bounds of the four allowed areas of argument, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts harmful to the accused into the trial proceeding. *Todd v. State*, 598 S.W.2d 286,

297 (Tex.Crim.App.1980). We conclude that under the facts of the present case, the argument was manifestly improper and injects new facts harmful to the accused into the trial proceedings. We reach this conclusion because the prosecutor persisted in the objectionable remarks after an objection had once been sustained. A jury cannot help but be impressed and persuaded by the prosecutor's repeated insistence that the police officers were in danger of violence from appellant should he reach the handguns. The prosecutor's attempt to circumvent the ruling of the trial court and further remark on the danger of violence from appellant toward the police officers was obviously and visibly improper. In the present case, the prosecutor compounded the error by refusing to abide by the trial court's four rulings. Therefore, we conclude that the prosecutor's failure to honor and respect the trial court's ruling sustaining the first objection places this error over the line between harmless and reversible. We hold that the attempt to circumvent the rulings of the trial court in the present case by repeating objectionable remarks was manifestly improper and injected new facts harmful to the accused into the trial proceedings. The record in this case reflects a course of conduct by the prosecutor which continually brought matters before the jury which were impermissible and that could only have been calculated to inflame and prejudice the minds of the jury. *Wright,* 609 S.W.2d at 806. We do not hesitate to reverse a conviction based on such prosecutorial misconduct. *Dakin,* 632 S.W.2d at 868. Therefore, in the present case, we conclude that the combined and cumulative effect of the remarks when repeated was of such prejudicial nature as calls for reversal. *See Moynahan v. State,* 140 Tex.Crim. 540, 546, 146 S.W.2d 376, 379 (1941). Consequently we conclude that the trial court erred in failing to grant appellant's fourth timely motion for a mistrial because of the prosecutor's prejudicial, manifestly improper and harmful jury argument at the guilt or innocence stage of the trial.

 In holding that the trial court erred in failing to grant appellant's fourth

motion for a mistrial, we are aware that at one point during the prosecutor's above-quoted argument the appellant failed to obtain a ruling from the trial court on an objection. We repeat that portion of the argument and the record immediately following:

> [Prosecutor]: It is a reasonable inference from the contact that happened and the words that could have been spoke, they've got their own words, but you get the general impression, this man was getting into the Officer's face, encroaching on his space, to get back in that car to get to those guns.
>
> Now, what would have happened if he had gotten to those guns, an armed robber getting back into his car to get two firearms when the police are intent on taking him to jail.
>
> [Defense Counsel]: Your Honor, *I'm going to have to object to that.*
>
> THE COURT: Is that a reasonable deduction from the evidence?
>
> [Prosecutor]: It is a reasonable deduction from the evidence, Your Honor, and common sense tells you what would happen thereafter.
>
> [Defense Counsel]: *Object to the sidebar comments.*
>
> THE COURT: Sustained.
>
> [Defense Counsel]: Please admonish the Jury to disregard that.
>
> THE COURT: Disregard the sidebar comments.
>
> [Defense Counsel]: Ask for a mistrial.
>
> THE COURT: Denied.

(emphasis added). Thus, appellant failed to obtain a ruling to an objection. We are cognizant of the rule that in the absence of an adverse ruling nothing is presented for review. *Evans v. State,* 622 S.W.2d 866, 871 (Tex.Crim.App.1981). We note, however, that the prosecutor, even in response to the court's inquiry, continued to present to the jury his objectionable theme— "[y]our Honor, and common sense tells you what would happen thereafter." Hence, the prosecutor by sidebar remark again advanced his imaginary attempted violence by appellant against police officers. Thus,

diverted, defense counsel had to again object and this time obtained the trial court's ruling sustaining the objection. We conclude that the appellant's failure to obtain a ruling on his above objection is not fatal in the present case. Even where error concerning the prosecutor's jury argument was not properly preserved, the Court of Criminal Appeals will not hesitate to reverse a judgment where the prosecutor engages in conduct calculated to deny the accused a fair and impartial trial. *See Johnson v. State*, 604 S.W.2d 128, 135 (Tex. Crim.App.1980). In the present case, we conclude that the prosecutor engaged in conduct calculated to deny the accused a fair and impartial trial. We reason that one slip by defense counsel in the heat of the battle necessary to challenge the prosecutor's extended improper tactics should not deny appellant the fair trial to which he is entitled by due process of law. Reversal is justified to reaffirm the critical importance of convicting the accused only upon the evidence presented, without attempting to inflame or prejudice the minds of the jurors. *See Boyde v. State*, 513 S.W.2d 588, 591, 593 (Tex.Crim.App.1974). We sustain appellant's first point of error and reverse and remand.