# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00469-CR
NO. 03-04-00470-CR
NO. 03-04-00471-CR

**Sammie Coleman, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. 9044089, 9044090, 9044092, HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Sammie Coleman of one count of aggravated assault, one count of deadly conduct, and three counts of felon in possession of a firearm. *See* Tex. Pen. Code Ann. § 22.02 (aggravated assault) (West Supp. 2005), § 22.05 (deadly conduct) (West 2003), § 46.04 (firearm) (West Supp. 2005). The jury also found that Coleman employed a deadly weapon in the commission of each offense. *See* Tex. Code Crim. Proc. art. 42.12 § 3g(a)(2) (West Supp. 2005). The court sentenced Coleman as a habitual felon to serve the following concurrent sentences: forty-five years for the aggravated assault, thirty-five years for the deadly conduct, thirty years for the first count of felon in possession of a firearm, and twenty-five years each for the second and third possession counts. *See* Tex. Pen Code Ann. § 12.42 (West Supp. 2005). In this appeal, Coleman contends that (1) the district court erred by consolidating two felon in possession of a firearm counts

that did not arise out of the same criminal episode as the other charged offenses; (2) the district court incorrectly stated the law in its charge on his necessity defense; (3) the evidence was factually insufficient to support a conviction for two of the three counts of felon in possession of a firearm; and (4) he was deprived of the effective assistance of counsel. We will affirm the judgments of conviction.

## BACKGROUND

This case arises out of a confrontation between Coleman and David Harris, in which Coleman shot Harris eight times with a .40 caliber semiautomatic pistol.[1] Both men had been romantically involved with Tanisha Burton. The events in question took place in the early morning hours of August 6, 2003. Coleman arrived at Burton's house after midnight wanting to speak with her. After a short argument, Coleman returned home. Harris then called Coleman on the telephone warning him to leave Burton alone; the two exchanged harsh words and threats. Over the course of the evening, Harris learned that Coleman had a key to Burton's home. This made Harris uncomfortable, and he insisted that Burton retrieve her key immediately, even though it was 3:30 a.m.

Burton and Harris then drove to Coleman's home. Burton went inside while Harris waited down the street. When Burton and Coleman began arguing, Harris approached, worried about Burton's safety. After Harris announced his presence, Coleman pulled out a gun and shot Harris.

---

[1] Harris testified that he was shot eight times. Coleman testified that he shot in "rapid fire." Fifteen shells were found nearby. The evidence was disputed as to whether Coleman reloaded or, instead, had a modified clip that held more rounds than a typical .40 caliber pistol.

Coleman's description of the events differed from Burton and Harris's account. Coleman testified that Harris drew a gun and that he fired at Harris only in self defense.

Coleman fled the scene but turned himself in the following day. In a subsequent search of Coleman's home, the police discovered a .20 gauge shotgun and a .22 caliber rifle locked to a metal bracket in the closet of an office. The police also found a leather bag containing .20 gauge shotgun shells in the office. At trial, Coleman's uncle testified that he had been storing the rifle and shotgun in Coleman's home and that Coleman did not have a key to the lock. His uncle did not mention leaving a bag with shotgun shells with Coleman.

## DISCUSSION

**Misjoinder**

In his first point of error, Coleman contends that the district court committed fundamental error when it consolidated the two counts of felon in possession of a firearm involving the shotgun and rifle found locked in Coleman's closet with the three counts for offenses arising out of his assault of Harris. As Coleman admits in his brief, he raises this claim for the first time on appeal, citing *Fortune v. State* as support for the right to do so. 745 S.W.2d 364, 370 (Tex. Crim. App. 1988) (misjoinder of offenses is fundamental error subject to review at any time). Although *Fortune* has not been expressly overruled, it was decided under a prior version of the constitution and code of criminal procedure, which were amended after the trial occurred in *Fortune. See id.* at n.1.

In *Nolte v. State,* we observed that, as amended in 1987, the constitution and the code of criminal procedure prohibit raising defects in the indictment for the first time on appeal. *See* 854

3

S.W.2d 304, 308 (Tex. App.—Austin 1993, pet. ref'd) ("all defects in a charging instrument were waived if not raised by a defendant before trial . . . appellant's failure to timely object to the misjoinder waived his right to demand that this Court set aside the convictions arising from the misjoined offenses") (citing *Studer v. State*, 799 S.W.2d 263, 270-71 (Tex. Crim. App. 1990)). Several of our sister courts have reached the same conclusion—that *Fortune* no longer controls the preservation of error in misjoinder claims following the 1987 amendments. *See Sanchez v. State*, 928 S.W.2d 255, 257-58 (Tex. App.—Houston [14th Dist.] 1996, no pet.) ("[S]ince the court of criminal appeals announced its decision, the underlying statutory and constitutional provisions have changed. . . . Under the newer article [1.14], an objection is required to preserve a misjoinder error, [and] . . . reading the current versions of article 21.24 and 3.01 together, it is permissible for the State to join two or more [non-property] offenses in a single indictment if the offenses are part of the same criminal transaction or if the offenses are part of a common scheme or plan."); *Anderson v. State*, 905 S.W.2d 367, 369-70 (Tex. App.—Fort Worth 1995, pet. ref'd) (*Fortune* "deal[t] with [an] indictment returned prior to the effective date of article 1.14(b) . . ., [which] now requires objection to preserve the error of misjoinder. Failure to object prior to trial waives the error."); *McGowen v. State*, 885 S.W.2d 285, 291 (Tex. App.—Beaumont 1994, no pet.) (noting *Fortune* was decided on prior statutes and holding that, pursuant to article 1.14(b), defendant must object to indictment errors before trial to preserve error); *Howell v. State*, 795 S.W.2d 27, 28 (Tex. App.—El Paso 1990, pet. ref'd) (since *Fortune*, penal code was amended to allow accused to be charged with multiple property offenses in single indictment); *see also Denton v. State*, No. 03-96-00006-CR, 1998 Tex. App. LEXIS 4981, at *33 (Tex. App.—Austin Aug. 13, 1998, pet. ref'd) (failure to object to

misjoinder prior to trial waived right to raise matter on appeal; Fortune does not control because based on rulesin effect before adoption of article 1.14(b)).

Thus, it is well-settled that, pursuant to the current version of article 1.14(b) of the code of criminal procedure, a claim of misjoinder is not fundamental error and may not be raised for the first time on appeal. *See Mallett v. State*, 28 S.W.3d 603, 606-07 (Tex. App.—Corpus Christi 2000), *rev'd on other grounds*, 65 S.W.3d 59 (Tex. Crim. App. 2001); *Sanchez*, 928 S.W.2d at 257; *Anderson*, 905 S.W.2d at 369; *Nolte*, 854 S.W.2d at 308. Because Coleman did not raise this issue in the district court, he has waived error. We overrule Coleman's first point of error.

**Charge on Necessity**

In his second point of error, Coleman contends that the district court's charge on his necessity defense was fundamentally defective. The jury was instructed to acquit Coleman of illegally possessing the .40 caliber pistol if it found that Coleman "reasonably believed that such act was immediately necessary to avoid imminent harm, to wit: an assault by David Harris." The jury was also instructed that Coleman might have been "justified in exhibiting a firearm to ward off such an assault." Coleman argues that these instructions improperly limited the jury's authority to acquit, excluding the possibility that he was entitled to possess the pistol if he "reasonably believed that possession was immediately necessary to avoid being harmed by Harris in the near future." We need not decide whether this instruction was error because we find that any error was harmless.

Because Coleman did not object to this charge, we review any error under the *Almanza* standard. *See Almanza v. State*, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op. on reh'g). We reverse only if an error in the instruction resulted in egregious harm, depriving the

5

appellant of a fair and impartial trial. *See id.*; *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004). In this case, Coleman testified that he had owned the .40 caliber pistol for more than two years before he used it to shoot Harris. Coleman was not entitled to a necessity instruction because his continued possession of the firearm for over two years could not have been based on his "reasonable belief that the criminal conduct was immediately necessary to avoid imminent harm." *See Stefanoff v. State*, 78 S.W.3d 496, 501 (Tex. App.—Austin 2002, pet. ref'd) (emphasis omitted) (imminent harm component of necessity defense requires "an immediate, non-deliberative action made without hesitation or thought of legal consequence"). Because Coleman was not entitled to an instruction on the necessity defense, we hold that any error in such an instruction did not constitute egregious harm.[2] *See Almanza*, 686 S.W.2d at 171-72. We overrule Coleman's second point of error.

**Factual Sufficiency**

In his third and fourth points of error, Coleman contends that the evidence was factually insufficient to support a conviction for possession of his uncle's shotgun and rifle. When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex.

---

[2] Coleman claims that the instruction limited the jury's consideration of his necessity defense. He does not allege that the instruction affected any other aspect of the trial.

App.—Austin 1992, no pet.). Although due deference still must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the evidence of guilt, considered alone, is too weak to support a finding of guilt beyond a reasonable doubt, or if the strength of the contrary evidence precludes a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85.

We analyze the sufficiency of the evidence in cases involving possession of a firearm by a felon under the rules adopted for determining the sufficiency of the evidence in cases of possession of a controlled substance. *Coleman v. State*, 188 S.W.3d 708, 720 (Tex. App.—Tyler 2005, pet. ref'd); *Corpus v. State*, 30 S.W.3d 35, 37 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Young v. State*, 752 S.W.2d 137, 140 (Tex. App.—Dallas 1988, pet. ref'd). Therefore, the State was required to prove that Coleman knew of the weapons' existence and that he exercised actual care, custody, control, or management over them. *Coleman*, 188 S.W.3d at 720; *Corpus*, 30 S.W.3d at 37; *see also Cude v. State*, 716 S.W.2d 46, 47 (Tex. Crim. App. 1986). A person's control of the contraband need not be exclusive; it is sufficient if the evidence establishes that the defendant and another jointly possessed the contraband. *Martin v. State*, 753 S.W.2d 384, 387 (Tex. Crim. App. 1988); *In re K.T.*, 107 S.W.3d 65, 72 (Tex. App.—San Antonio 2003, no pet.).

Coleman's uncle left the guns in Coleman's home for safekeeping. The very purpose of the arrangement was for Coleman to exercise care, custody, control, or management over the firearms. Although the guns were locked by a chain to a bracket in Coleman's closet, this bracket could simply be unscrewed from the wall to access the guns. Moreover, Coleman's possession of

7

ammunition for the shotgun is some indication that Coleman was not merely storing the weapons. Viewing the evidence neutrally, we hold that the jury's finding that Coleman was in possession of the shotgun and rifle found locked in his closet does not constitute a manifest injustice. *See Johnson*, 23 S.W.3d at 9. Accordingly, we overrule Coleman's third and fourth points of error.

**Ineffective Assistance of Counsel**

In his final point of error, Coleman asserts that he was deprived of the effective assistance of counsel because his attorney's actions and omissions permitted the jury to hear evidence of his prior felony convictions. Specifically, Coleman points to his attorney's failures to object to consolidating the cases, to file a motion in limine regarding the six prior felony convictions, and to object to the admission of the prior felonies, as well as his attorney's decision to elicit direct testimony from Coleman about the prior convictions.

We evaluate claims of ineffective assistance of counsel at both phases of a criminal trial against the standard set forth in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772, 774 (Tex. Crim. App. 1999) (applying *Strickland* standard). In deciding a claim of ineffective assistance of counsel, we must determine whether an attorney's performance was deficient, and if so, whether that deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688; *Thompson*, 9 S.W.3d at 812.

Deficient performance is prejudicial when, but for the attorney's unprofessional conduct, there is a reasonable probability that the outcome of the proceeding would have been

different. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812. Absent both showings, we cannot conclude that there was a breakdown in the adversarial process that rendered the result of a trial unreliable. *Thompson*, 9 S.W.3d at 813.

In determining whether an attorney's performance was deficient, we apply a strong presumption that the attorney's conduct was within the range of reasonable professional assistance. *Id*. at 814. We do not speculate about an attorney's strategy. *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.); *see also Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999) (courts not "required to condone unreasonable decisions parading under the umbrella of strategy, or to fabricate tactical decisions on behalf of counsel when it appears on the face of the record that counsel made no strategic decision at all"). We review the effectiveness of counsel in light of the totality of the representation and particular circumstances of each case. *Thompson*, 9 S.W.3d at 813.

"[A]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id*. at 814 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). The appellant bears the burden of overcoming the presumption of reasonable attorney performance and is required to prove by a preponderance of the evidence that his counsel was ineffective. *Blevins*, 18 S.W.3d at 271; *Mayhue v. State*, 969 S.W.2d 503, 511 (Tex. App.—Austin 1998, no pet.). Therefore, the appellant must produce a record from which we may discern that his attorney's performance was not based on sound trial strategy. *Blevins*, 18 S.W.3d at 271. We recognize that this burden is difficult to meet on direct appeal. In the majority of cases, the record on direct appeal is simply underdeveloped and cannot adequately reflect the failing of trial counsel. *Thompson*, 9 S.W.3d at 813-14; *see also Andrews v.*

9

*State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). Ineffective assistance of counsel claims may be reviewed on direct appeal only when "no reasonable trial strategy could justify the trial counsel's conduct, [thus] counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did." *Andrews*, 159 S.W.3d at 102.

Here, Coleman did not allege ineffective assistance of counsel in his motion for new trial and there is no record reflecting his attorney's trial strategy with regard to his prior convictions. On this undeveloped record, especially in light of the fact that Coleman testified at trial,[3] we cannot conclude that counsel's performance fell below an objective standard of reasonableness. *See id*. We overrule Coleman's fifth and final point of error.

**CONCLUSION**

Having overruled all of Coleman's points of error, we affirm the convictions.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 28, 2006

Do Not Publish

---

[3] A witness's credibility may be impeached by evidence that he has been convicted of a felony or other crime of moral turpitude. *See* Tex. R. Evid. 609.